UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin Scott Karsjens, David Leroy Gamble, Jr., Kevin John DeVillion, Peter Gerard Lonergan, James Matthew Noyer, Sr., James John Rud, James Allen Barber, Craig Allen Bolte, Dennis Richard Steiner, Kaine Joseph Braun, Christopher John Thuringer, Kenny S. Daywitt, Bradley Wayne Foster, Brian K. Hausfeld and all others similarly situated,<br><br>                                Plaintiffs,<br><br>v.<br><br>Lucinda Jesson, Dennis Benson, Kevin Moser, Tom Lundquist, Nancy Johnston, Jannine Hébert, and Ann Zimmerman, in their individual and official capacities,<br><br>                                Defendants. | Court File No. 11-cv-03659 (DWF/JJK)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT** |

## INTRODUCTION

The current statutory standard applied in commitment proceedings to determine whether to commit a person to the MSOP is much less stringent than the statutory standard as applied to determine whether to discharge a person from commitment to the MSOP. The difference between these two standards as applied renders the commitment statute, Minn. Stat. § 253B.185, unconstitutional. Therefore, Plaintiffs move for declaratory judgment finding that Minn. Stat. § 253B.185 is unconstitutional.

# BACKGROUND

### A.   Procedural Background

This case was originally filed on December 21, 2011 as a *pro se* case. The undersigned counsel filed a Notice of Appearance on January 20, 2011. Plaintiffs filed an Amended Complaint on March 15, 2012 alleging the following conduct by Defendants: 1) failure to provide treatment, 2) denial of right to be free from punishment, 3) denial of less-restrictive alternatives, 4) denial of right to be free from inhumane treatment, 5) denial of right to religious freedom, 6) unreasonable restrictions on speech and association, 7) unreasonable searches and seizures, 8) the civil commitment statute is unconstitutional as applied, 9) violation of court-ordered treatment, and 10) breach of contract.

On June 28, 2012, Plaintiffs moved to have an injunctive Class certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure [*Karsjens* Dkt. # 171]. On July 24, 2012, Judge Frank issued an Order certifying the Class defined as "All patients currently civilly committed in the Minnesota Sex Offender Program pursuant to Minn. Stat., §253B."

On August 8, 2013, Plaintiffs filed a Second Amended Complaint. [*Karsjens* Dkt. #171] ("*Karsjens* Complaint").

### B.   Relevant Factual Background

Plaintiffs and Class members are all civilly committed to the MSOP under Minn. Stat. § 253B. Pursuant to Minn. Stat. § 253B.185, subd. 1(d), if the court finds by clear and convincing evidence that the prospective patient meets the statutory definition of a

Sexual Psychopathic Personality ("SPP") or a Sexually Dangerous Person ("SDP"), they will be committed to the MSOP under a court order for sex offender specific treatment.

Under Minn. Stat. § 253B.02, subd. 18b, a SPP is defined as, "any person of such conditions or emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions, which render the person irresponsible for personal conduct with respect to sexual matters, if the person has evidenced, by a habitual course of misconduct in sexual matters, an utter lack of power to control the person's sexual impulses and, as a result, is dangerous to other persons."

Under Minn. Stat. § 253B.02, subd. 18c., a SDP is defined as "a person who: (1) has engaged in a course of harmful sexual conduct as defined in subdivision 7a;[1] (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 7a." In order to find that a person is an SDP, the state does not have to prove they have an inability to control their impulses.

The discharge standard does not mirror the requirements of the commitment standard. To be discharged, the patient must first petition the special review board ("SRB"). The MSOP gives the SRB documents from the Plaintiffs' and Class members' records including the commitment order and any appeals, all prior SRB or judicial appeal

---

[1] Subdivision 7a states "(a) "Harmful sexual conduct" means sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another."

panel findings, and relevant treatment information such as quarterly and annual reviews.[2]

The SRB shall hold a hearing on each petition before issuing written findings of fact and recommendation of denial or approval of the petition. Minn Stat. § 253B.185, subd. 9. The decision of the SRB, which nearly always finds that the petition should be denied, is then reviewed by the judicial appeal panel.  In order for a patient to be granted provisional discharge, the judicial appeal panel must find that the patient is capable of making an acceptable adjustment to open society. Minn Stat. § 253B.185, subd. 12. The judicial appeal panel must consider:

> (1)   whether the patient's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the patient's current treatment setting; and
>
> (2)   whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the patient to adjust successfully to the community."

*Id.* The SRB considers these same factors in making its recommendation.

In order to receive a full discharge from civil commitment under Minn. Stat. § 253B, the judicial appeal panel must find that:

> (1)   the patient is capable of making an acceptable adjustment to open society,
>
> (2)   is no longer dangerous to the public, and
>
> (3)   no longer needs inpatient treatment and supervision.

---

[2] The treatment records for Plaintiffs and Class members kept by Defendants are likely deficient due to chronic and persistent understaffing at the MSOP and the MSOP's failure to provide a consistent level and type of treatment. *See* Office of the Legislative Auditor, State of Minnesota, *Evaluation Report: Civil Commitment of Sex Offenders* (March 2011) at 58-60, *available at* http://www.auditor.leg.state.mn.us/ped/pedrep/ccso.pdf (hereinafter "Auditor's Report").

Minn. Stat. § 253B.185, subd. 18. The judicial appeal panel must also consider whether there are conditions in place to protect the public and assist the patient in adjusting to the community. *Id.* The SRB considers these same factors in making its recommendation.

The MSOP will not support patients for provisional or final discharge unless the patient has completed the MSOP treatment program. *See* Office of the Legislative Auditor, State of Minnesota, *Evaluation Report: Civil Commitment of Sex Offenders* (March 2011) at 88, *available at* http://www.auditor.leg.state.mn.us/ped/pedrep/ccso.pdf (hereinafter "Auditor's Report"). Furthermore, the petition process through the SRB and judicial appeal panel can be very lengthy due to the backlog of petitions the SRB must hear. *See Minnesota Sex Offender Program Annual Performance Report 2012* (January 2013) at 11, *available at* https://edocs.dhs.state.mn.us/lfserver/Public/DHS-6677-ENG (hereinafter "Annual Report").

Only two civilly committed sex offenders have been granted provisional discharge, one of whom was returned to MSOP after a technical violation of his release conditions, and no one has ever received a full discharge from the MSOP since at least 1994. *See* Auditor's Report at 19; *Karsjens* Complaint at ¶ 207.[3] One of the predominant reasons patients are not granted provisional or full discharge from the MSOP is a 2003 Executive Order issued by then-Governor Pawlenty, which found that "one of the primary purposes of the civil commitment of persons who have been determined by a

---

[3] Recently, the Commissioner of the Department of Human Services confirmed that they will support the conditional release of two Class members who are committed to the MSOP. Their release has not yet been approved by the judicial appeal panel.

court to be a sexually dangerous person or a person with a sexual psychopathic personality is to protect the public from future sexual assaults" and ordering that state agencies and the Commissioner of Human Services take all appropriate action to ensure that individuals committed as sexually dangerous persons or as persons with sexual psychopathic personalities are not allowed into the community "unless required by law or ordered by a court of competent jurisdiction." *See* Affidavit of Daniel E. Gustafson attached as Exhibit A.

## ARGUMENT

### A. Declaratory Judgment is Appropriate in this Case

The Declaratory Judgment Act provides that, "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). An actual controversy that is ripe for adjudication pursuant to the Declaratory Judgment Act exists if, "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America*, 687 F.3d 1076, 1082 (8th Cir. 2012) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

It is appropriate for courts to render declaratory judgments when "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and

"when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *See Alsager v. District Court of Polk County, Iowa (Juvenile Div.)*, 518 F.2d 1160, 1163 (8th Cir. 1975) (quoting E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941); *see also MASTR Asset Backed Securities Trust 2006-HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC Motg. Corp.*, 843 F.Supp.2d 996, 1001 (D. Minn. 2012). An early decision of the issue allows the parties to avoid the unnecessary accrual of damages. *See Riedell Shoes, Inc. v. Adidas AG*, CIV. 11-251 MJD/AJB, 2011 WL 1868180 at *5 (D. Minn. May 16, 2011); *Lancaster v. N. States Power Co.*, CIV. 11-619 DWF/FLN, 2011 WL 5444115 at *6 (D. Minn. Nov. 9, 2011).

Declaratory judgment is the appropriate relief to resolve the issue of whether Minn. Stat. § 253B.185 is unconstitutional as a result of the discharge standard the statute provides for. An actual controversy exists because all Plaintiffs and Class members are committed under Minn. Stat. § 253B.185 and cannot be discharged from their commitment without meeting the discharge criteria laid out in the statute. Their continued confinement under this statute has resulted in ongoing injury to all Plaintiffs and Class members because their constitutional liberty rights are significantly limited as a result of their civil commitment. The continuing irreparable injury that Plaintiffs and Class members are suffering gives this issue sufficient immediacy to warrant declaratory judgment.

Furthermore, declaratory judgment on this issue will settle one of the basic issues in this litigation - whether the civil commitment statute is constitutional even though no patients have ever been fully discharged from commitment. The immediate resolution of

7

this fundamental issue will "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager*, 518 F.2d at 1163.

Finally, declaratory judgment on the issue of the constitutionality of the discharge standard at this point in the litigation will limit the accrual of damages. As stated above, Plaintiffs and Class members are suffering irreparable harm each day due to their commitment under an unconstitutional statute that severely limits their fundamental liberty rights. A declaration finding Minn. Stat. § 253B.185 unconstitutional will limit the accrual of Plaintiffs' and Class members' damages.

### B. Minn. Stat. § 253B.185 is Unconstitutional

Civil commitment is a "massive curtailment of liberty" that is scrutinized under the due process clause of the Fourteenth Amendment. *Welsch*, 373 F. Supp. at 491 (quoting *Humphrey,* 405 U.S. at 509 (1972)). Although courts have upheld involuntary civil commitments for those who are unable to control their behavior and thereby pose a threat to the public, "'[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed.'" *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992); *Thompson v. Ludeman et al.*, 11-cv-1704 (DWF/JJK) at p. 59 [Doc. No. 39] (hereinafter "*Thompson R & R*") (*citing Foucha*, 504 U.S. at 79; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). "Involuntary commitment is more than a loss of freedom from confinement." *Foucha*, 504 U.S. at 79 (1992)) (citation omitted). Therefore, involuntary commitment statutes are only upheld where the confinement takes place pursuant to the proper procedures and evidentiary standards and the confinement bears some reasonable relationship to the purpose for which the person is committed.

*Kansas v. Hendricks*, 521 U.S. 346, 357 (citing *Foucha,* 504 U.S. at 80 (1992));

*Thompson R & R* at p. 59 (*citing Foucha*, 504 U.S. at 79; *Jackson*, 406 U.S. at 738). As this Court recently recognized: "Minnesota's civil commitment law for sex offenders is not intended to be punitive. Its purported purpose is to protect the public while the committed individual is treated for his mental abnormality." *See Thompson R&R* at p. 58-59.

The discharge standard as applied renders Minn. Stat. § 253B.185 unconstitutional[4]. Even if the discharge standard in the statute provides for constitutionally adequate procedures as the Minnesota Supreme Court held in *Call v. Gomez*, 535 N.W.2d 312, 319-319 (Minn. 1995) (applying former version of the statute), the actual application of those procedures can still render the statute unconstitutional. *See Foucha*, 504 U.S. 80 (finding, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." (quotation omitted)); *Call*, 535 N.W. 2d at 319 ("So long as the statutory discharge criteria are applied in such a way that the person subject to commitment as a psychopathic personality is confined for only so long as he or she continues both to need further inpatient treatment and supervision for his sexual disorder and to pose a continued danger to the public, continued commitment is justified

---

[4] Defendants may argue that the holding in *Seling v. Young*, 531 U.S. 250 (2001) precludes an "as applied" analysis in challenging the constitutionality of this statute. However, this is too broad of a reading of *Seling*. Although *Seling* did reject the Ninth Circuit's "as applied" analysis for double jeopardy and ex post facto claims, *see id* at 264-65, Plaintiffs here make no such claims here. Moreover, Plaintiffs do not challenge the constitutionality of this statute based on a set of conditions for a single individual, but rather for a class of people based on a repeated course of conduct over years.

because the confinement bears a reasonable relation to the original reason for commitment.")

Here, although the discharge standard provides for release when a patient is capable of making an adjustment to open society, is no longer dangerous to the public, and no longer needs inpatient treatment and supervision, this standard is clearly being applied in such a way as to prevent release because no patient has ever been fully discharged from commitment under Minn. Stat. § 253B.185. In fact, even if the patient meets the statutory discharge criteria, the MSOP will not support a patient's petition for discharge until the patient has completed the MSOP's treatment program. Furthermore, the SRB and judicial appeal panel have such a backlog of cases that Plaintiffs and Class members have to wait months to have their petitions heard. This is clear evidence that the discharge statute, as applied, does not comport with the well-established due process requirement that civil commitment bear a reasonable relationship to the purpose for commitment, which is to provide treatment to committed offenders and protect public safety.

Here, the statute itself contemplates release when it talks about "render further supervision unnecessary" but the actual practice of the SRB and judicial appeal panel is to "just say no." See Auditor's Report at p. 87-88. Furthermore, former Governor Pawlenty's 2003 Executive Order provides that patients should not be released from the MSOP unless required by law or a court order, which strongly suggests that the policy and practice of the State is to not release any Plaintiffs or Class members, regardless of whether they may meet the discharge criteria. As a matter of law, this Court should

conclude that the release statute is being unconstitutionally applied because out of the more than 600 patients committed to the MSOP, no one has ever satisfied the statutory criteria for full discharge from commitment.

Alternatively, Minn. Stat. § 253B.185 is unconstitutional because the discharge standard allows the state to continue civil commitment of SDPs after the person no longer meets the statutory criteria for commitment. Based on the standard articulated by the Supreme Court in *Hendricks* and *Foucha*, the Minnesota civil commitment statute does not provide the proper procedural safeguards because patients may continue to be committed after they no longer meet commitment criteria. *See Hendricks*, 521 U.S. at 257 (citing *Foucha* 504 U.S. at 80). In other words, people who would no longer satisfy the commitment statute (i.e. could not be committed) are being held because they can't satisfy the discharge statute. *Compare Strutton v. Meade,* 668 F.3d 549, 551-52 (8th Cir. 2012) (requiring an annual review of each patient to assess commitment status). Even if Plaintiffs and Class members no longer meet the statutory definition of SPP or SDP, they continue to be committed to the MSOP and suffer a "massive curtailment of liberty." *Welsch v. Likins*, 373 F. Supp. 487, 491 (D. Minn. 1974) (quoting *Humphrey v. Cady*, 405 U.S. 504, 509 (1972)).

As recognized in the Auditor's Report, MSOP clients' diagnoses can change. "A client who no longer has a disorder that could result in inadequate control of his behavior would no longer meet the commitment standard." *See* Auditor's Report at p. 89. The Auditor's Report stated that there were individuals committed to MSOP "whose crimes were exclusively against other children when they themselves were juveniles. These

11

clients were sometimes originally given diagnoses of pedophilia.  Some clients in this situation have had their diagnoses changed because, as adults they do not have a persistent attraction to children." *Id.*  The Auditor's Report also noted that there may be some individuals who were committed to MSOP in part by the court's reliance on expert clinical judgment (which research has now shown to be the least reliable predictor of risk) and that if these individuals were to be assessed with current actuarial tools, some of these clients could no longer be found to be high risk.  *Id.*  And yet, despite the fact that they would not meet the commitment standard under today's assessment tools, they must meet the discharge standard before they can be released.  To take an even more extreme example, if an individual were suddenly impaired by way of a coma, it is not clear whether this individual, although it would appear unlikely that in his current state he could meet the commitment criteria, would meet the discharge criteria (i.e. capable of making an acceptable adjustment to open society, among other factors).

Although the Minnesota Supreme Court has held that the discharge standard is constitutional and applicable to all discharge petitions even if a patient no longer meets the statutory requirements for commitment, this decision was made with regards to the psychopathic personality statute, which requires a finding that the person to be committed has "an utter lack of power to control" their sexual impulses. *See Call*, 535 N.W.2d at 317. The current civil commitment law incorporates this "utter lack of power to control" requirement into the definition of SPP, but that language is not found in the definition of SDP. If a patient committed as an SDP is no longer "likely to engage in acts of harmful sexual conduct," there is no longer a reason to confine them in order to provide treatment

and ensure public safety. *See* Minn. Stat § 253B.185; *Thompson R&R* at p. 58-59. As a result, the statute is unconstitutional because it fails to provide adequate due process protections to Plaintiffs and Class members.

For the above-stated reasons, Minn. Stat. § 253B.185 should be declared unconstitutional as applied or, alternatively, declared unconstitutional on its face.

## CONCLUSION

Based on the foregoing reasoning, Plaintiffs' and Class members' Motion for a Declaration that Minn. Stat. § 253B.185 is unconstitutional should be granted.

Dated:  August 22, 2013               Respectfully Submitted,

                                      s/Daniel E. Gustafson
                                      Daniel E. Gustafson (#202241)
                                      Karla M. Gluek (#238399)
                                      David A. Goodwin (#386715)
                                      Raina C. Borrelli (#392127)
                                      **Gustafson Gluek PLLC**
                                      Canadian Pacific Plaza
                                      120 South Sixth Street, Suite 2600
                                      Minneapolis, MN  55402
                                      Telephone: (612) 333-8844

                                      *Attorneys for Plaintiffs*