**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Kevin Scott Karsjens, David Leroy Gamble, Jr., Kevin John DeVillion, Peter Gerard Lonergan, James Matthew Noyer, Sr., James John Rud, James Allen Barber, Craig Allen Bolte, Dennis Richard Steiner, Kaine Joseph Braun, Christopher John Thuringer, Kenny S. Daywitt, Bradley Wayne Foster, Brian K. Hausfeld  and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Lucinda Jesson, Dennis Benson, Kevin Moser, Tom Lundquist, Nancy Johnston, Jannine Hébert, and Ann Zimmerman, in their individual and official capacities,<br><br>Defendants. | Court File No. 11-cv-03659 (DWF/JJK)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION TO PROVIDE LESS RESTRICTIVE ALTERNATIVE TREATMENT FACILITIES AND TO RE-EVALUATE CLASS MEMBERS** |

**INTRODUCTION**

Plaintiffs move this Court for an Order requiring Defendants to immediately

provide less restrictive alternative treatment facilities for the Plaintiffs and Class

members in this case and to immediately re-evaluate each Plaintiff and Class member to

determine if they should be placed in a less restrictive facility.

Currently, the only facilities available for Plaintiffs and Class members to be

housed in (or for anyone committed under Minn. Stat. §253B.185 to be placed) are the

secure treatment facilities located at Moose Lake and St. Peter, despite the fact that the

Minnesota Commitment Act provides for the possibility of, and the standards of Constitutional due process indicate the need for, less secure treatment options.

Both the Moose Lake and St. Peter facilities provide the same high level of security as is found in a prison, regardless of whether this level of security is necessary and "consistent with the patient's treatment needs and the requirements of public safety" for any of the individual Plaintiffs or Class members. Plaintiffs and Class members are suffering irreparable harm due to their confinement in a facility that dramatically inhibits their liberty interests without due process. Therefore, Plaintiffs' and Class members' Motion for Preliminary Injunction should be granted.

## BACKGROUND

### A.     Procedural Background

This case was originally filed on December 21, 2011 as a *pro se* case.  The undersigned counsel filed a Notice of Appearance on January 20, 2011.  Plaintiffs filed an Amended Complaint on March 15, 2012 alleging the following conduct by Defendants:  1) failure to provide treatment, 2) denial of right to be free from punishment, 3) denial of less-restrictive alternatives, 4) denial of right to be free from inhumane treatment, 5) denial of right to religious freedom, 6) unreasonable restrictions on speech and association, 7) unreasonable searches and seizures, 8) the civil commitment statute is unconstitutional as applied, 9) violation of court-ordered treatment, and 10) breach of contract.

On June 28, 2012, Plaintiffs moved to have an injunctive Class certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure [*Karsjens* Dkt. # 171]. On July

29745

24, 2012, Judge Frank issued an Order certifying the Class defined as "All patients currently civilly committed in the Minnesota Sex Offender Program pursuant to Minn. Stat., §253B."

On August 8, 2013, Plaintiffs filed a Second Amended Complaint [*Karsjens* Dkt. #171] ("*Karsjens* Complaint").

### B.     Relevant Factual Background

Plaintiffs and Class members are all civilly committed to the MSOP under Minn. Stat. § 253B. The commitment statute provides that patients shall be committed to a secure treatment facility "unless the patient establishes by clear and convincing evidence that a less restrictive treatment program is available that is consistent with the patient's treatment needs and the requirements of public safety." Minn. Stat. § 253B.185, subd. 1(d).

Currently, the MSOP does not offer any less restrictive alternative facilities for sex offenders to be civilly committed to, as Minn. Stat. § 253B.185, subd. 1(d) contemplates. Rather, all Plaintiffs and Class members must live at the Moose Lake or St. Peter facilities. Both of these facilities are laid out like state prisons with cell units facing into a central courtyard where Plaintiffs and Class members may be observed from one central station. *See Karsjens* Complaint at ¶ 137. They are surrounded by razor wire fences and staffed by uniformed security guards. *Id.* Even if a person can show that by clear and convincing evidence that a less restrictive treatment program would be consistent with the patient's treatment needs and the requirements of public safety, there is no facility to receive the patient.

29745

The Office of the Legislative Auditor found that because no alternative facilities exist, the provision of the law allowing the committing judge to consider less restrictive alternatives has no practical use. Judges must decide whether to release the offender or commit them to an extremely secure facility- there is no middle ground. *See* Office of the Legislative Auditor, State of Minnesota, Evaluation Report: Civil Commitment of Sex Offenders (March 2011) at 42, available at http://www.auditor.leg.state.mn.us/ped/pedrep/ccso.pdf. ("Auditor's Report"). The Auditor's Report found that Minnesota may be committing offenders to the Moose Lake or St. Peter facilities who could be treated and supervised in other settings. *Id.* at 43. The Auditor's Report recommended that the Minnesota Legislature consider implementing a continuum of options for commitment, including less restrictive facilities. *Id.* at 45. It also recommended that the MSOP evaluate all current patients and determine who could be treated in a less restrictive alternative setting. *Id.* at 46.  Plaintiffs now seek an order requiring just such action.

In January, 2013, Minnesota Department of Human Services ("DHS") issued a Request for Information ("RFI") to receive information from potential providers about the creation of new less restrictive MSOP facilities around the state. In August, 2013, the DHS issued a Request for Proposals ("RFP") for public and private contractors to work towards establishing a continuum of housing and residential facilities and community supervision for civilly committed sex offenders. The RFP states that the anticipated start of the contract is "Late Fall/Winter 2013-2014."

29745

Although the DHS and MSOP may be working towards providing less secure treatment facilities for those who are civilly committed, there is no guarantee as to whether such facilities will in fact be implemented and, if they are, when such facilities will be open and whether Plaintiffs and Class members will be considered for transfer to such facilities. Therefore, Plaintiffs move for a preliminary injunction requiring Defendants to (1) immediately open and operate sufficient less restrictive treatment facilities and (2) using independent evaluators, re-evaluate each Plaintiff and Class member to determine whether they should be placed in one of the less restrictive settings.

## ARGUMENT

The Courts have enumerated the critical showings for a motion for a preliminary injunction as follows:

1) Irreparable injury to the movant;

2) The balance between the injury and the harm that the preliminary injunction will cause to the other parties;

3) The movant's probability of success on the merits; and

4) The public interest.

*See Vonage Holdings Corp v. Nebraska Public Service Commission,* 564 F.3d 900, 904 (8th Cir. 2009), (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.3d 109, 114 (8th Cir. 1981)); *Stuart Hall Co., Inc. v. Ampad Corp.,* 51 F.3d 780, 783 n. 2 (8th Cir. 1995), (citing *Calvin Klein Cosmetics Corp. v. Lenox Lab.,* 815 F.2d 500, 503 (8th Cir. 1987)).

"The burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003), citing *Goff v. Harper,* 60 F.3d

29745

518, 520 (8th Cir. 1995). "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Industries Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir. 1998) (citing *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 485-86 (8th Cir. 1993), and *Calvin Klein Cosmetics Corp.,* 815 F.2d at 503).

Further, the "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc., v. Lewis,* 346 F.3d at 844, (citing *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996)). "When there is an adequate remedy at law, a preliminary injunction is not appropriate." *Id.* (citation omitted).  In addition, "an injunction cannot issue if there is no chance of success on the merits [.]" *Mid-America Real Estate Co. v. Iowa Realty Co.,* 406 F.3d 969, 972 (8th Cir. 2005), (citing *Firefighters Local Union No. 1784 v. Stotts,* 457 U.S. 561, 589 (1984) (O'Connor, J., concurring), and *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002)).

The Plaintiffs satisfy each of the criteria for a preliminary injunction and as such, this motion should be granted.

## A.    Irreparable Injury To The Movant

Plaintiffs and Class members suffer irreparable harm every day due to their confinement in the high security facilities at Moose Lake and St. Peter without the opportunity to exercise their statutory and due process rights to be housed in a less restrictive treatment facility more suited to their needs.

29745

Civil commitment involves a "massive curtailment of liberty" and therefore is strictly scrutinized under the due process clause of the Fourteenth Amendment. *Welsch v. Likins*, 373 F. Supp. 487, 491 (D. Minn. 1974) (quoting *Humphrey v. Cady*, 405 U.S. 504, 509 (1972)). Interference with the exercise of constitutional rights constitutes irreparable injury." *Maxam v. Lower Sioux Indian Cmty. of Minn.*, 829 F. Supp. 277, 282 (D. Minn. 1993). Although courts have upheld involuntary civil commitments for those who are unable to control their behavior and thereby pose a threat to the public, "`[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed.'" *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992); *Thompson v. Ludeman et al.*, 11-cv-1704 (DWF/JJK) at p. 59 [Doc. No. 39] (hereinafter "*Thompson R & R*") (*citing Foucha*, 504 U.S. at 79; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). In the context of civil commitment, due process requires that people who are subject to involuntary commitment must be treated in the least restrictive setting. *See Shelton v. Tucker*, 364 U.S. 479, 488 (1960) (finding that even where a legitimate government purpose exists, that purpose cannot be pursued in a manner that broadly limits fundamental personal liberties when it could be more narrowly achieved). Therefore, people who are subject to involuntary commitment must be treated in the least restrictive setting. *See Healey v. Murphy*, Civil Action Nos. 01-11099-NG, 04-30177-NG, 2011 WL 2693688 at * 5 (D. Mass. July 8, 2011) (declining to grant motion to dismiss for a claim by a civilly committed sex offender about the right to a less restrictive alternative, finding that when looking at the conditions of confinement as a whole, plaintiff had plead an adequate claim that they were unnecessarily punitive).

29745

Here, the commitment statute itself provides that less restrictive alternatives to confinement at a secure facility may be considered by the committing judge. *See* Minn. Stat. § 253B.185. Furthermore, due process requires that Plaintiffs and Class members be treated in the least restrictive setting in order to best protect their fundamental liberty interests.  *See Foucha*, 504 U.S. at 80.

Because Defendants do not offer any less restrictive facilities, Plaintiffs and Class members are being denied both their statutory right to prove they are better suited to a less secure facility as well as their due process right to be treated in a setting that corresponds to their level of risk and therefore the reason for which they were committed.

As a result, Plaintiffs' and Class members' constitutional right to liberty is being severely restricted, resulting in irreparable harm.

**B.** **The Balance Between The Injury And The Harm That The Preliminary Injunction Will Cause To The Other Parties**

As discussed above, each day that Plaintiffs and Class members are denied the opportunity to be transferred to less restrictive treatment facilities if a less restrictive treatment facility would be consistent with the patient's treatment needs and the requirements of public safety, they are experiencing significant injury due to the loss of their fundamental liberty rights.

Although creating new facilities and re-evaluating each Plaintiff and Class member using independent evaluators would be burdensome on Defendants, the burden is far outweighed by the benefit to Plaintiffs and Class members of having their liberty interests restored. Plaintiffs do not ask that Defendants sacrifice any measures necessary for community safety in the creation of these new facilities, nor do Plaintiffs ask that all

29745

8

Class members be placed in less secure facilities. Plaintiffs seek only that Defendants be required to provide alternative facilities for those Plaintiffs and Class member, who can show, by way of an independent evaluation, that treatment in such a facility is consistent with the patient's treatment needs and the requirements of public safety.

### C.        The Movant's Probability Of Success On The Merits

Civil commitment is a "massive curtailment of liberty" that is scrutinized under the due process clause of the Fourteenth Amendment. *Welsch,* 373 F. Supp. at 491 (quoting *Humphrey*, 405 U.S. at 509).  "Involuntary commitment is more than a loss of freedom from confinement." *Foucha*, 504 U.S. at 79. Therefore, involuntary commitment statutes are only upheld where the confinement takes place pursuant to the proper procedures and evidentiary standards and the confinement bears some reasonable relationship to the purpose for which the person is committed. *Kansas v. Hendricks*, 521 U.S. 346, 357 (emphasis added) (citing *Foucha,* 504 U.S. at 80 (1992)); *Thompson R & R* at p. 59 (*citing Foucha*, 504 U.S. at 79; *Jackson*, 406 U.S. at 738).  As this Court recently recognized: "Minnesota's civil commitment law for sex offenders is not intended to be punitive.  Its purported purpose is to protect the public while the committed individual is treated for his mental abnormality."  *See Thompson R&R* at p. 58-59.

If state law provides rights -- including treatment -- to involuntarily-committed individuals, the state has a duty to provide that treatment "in the least restrictive appropriate setting." *Ass'n for Retarded Citizens of N. Dakota v. Olson*, 713 F.2d 1384, 1393 (8th Cir. 1983) (applying North Dakota law); *see also Healy*, 2011 WL 2693688 at *5. Additionally, civilly-committed individuals have a right to an individualized program

29745

plan and the right to proper care and treatment to "render[] further supervision unnecessary." Minn. Stat. § 253B.03, subd. 7 (2012); *In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994); *In re Rice*, 410 N.W.2d 907, 910 (Minn. Ct. App. 1987). The possibility for civilly-committed individuals to petition to be moved to a less-restrictive environment is an incentive to progress in treatment. *Blodgett*, 510 N.W.2d at 916.

It is not disputed that the Minnesota civil commitment statute provides for the consideration of less restrictive facilities. Furthermore, it is not disputed that Defendants only operate two very secure facilities located at Moose Lake and St. Peter. There are no less restrictive alternative facilities for Plaintiffs and Class members to be committed to by the committing court or to petition for transfer to.  *See* Auditor's Report at p. 42 (noting that "Minnesota law allows judges to consider less restrictive settings to the secure facilities operated by MOSP .... While some judges have been willing to consider alternatives to committing certain offenders, there are no available alternatives that provide adequate supervision.")

Due to the well-settled law finding that (1) civil commitment is a severe restriction of a person's liberty interests, (2) that confinement under civil commitment laws must have a reasonable relationship to the purpose for civil commitment, and (3) that the plain language of the Minnesota commitment statute provides for less restrictive facilities, Plaintiffs' claims that the failure to provide less restrictive treatment facilities is unconstitutional and in violation of Minn. Stat. § 253B have a high probability of success.

29745

**D.    The Public Interest**

The public interest weighs in favor of granting the preliminary injunction.

Although placing civilly committed sex offenders in less restrictive facilities does

implicate a public interest in community safety, there is an equally strong public interest

in preserving constitutional rights. *See Doe v. LaDue*, 514 F.Supp.2d 1131, 1138 (D.

Minn. 2007). "It is always in the public interest to protect constitutional rights. *Javinsky-*

*Wenzek v. City of St. Louis Park*, 829 F. Supp. 2d 787, 801 (D. Minn. 2011).

Furthermore, Plaintiffs do not ask Defendants to sacrifice any necessary security

measures in these new facilities.

## CONCLUSION

Based on the foregoing reasoning, Plaintiffs' and Class members' Motion for

Preliminary Injunction requiring Defendants to immediately provide less restrictive

alternative treatment facilities for Plaintiffs and Class members in this case and to re-

evaluate each Plaintiff and Class member to determine if they should be placed in a less

restrictive facility should be granted.

Dated:  August 22, 2013                  Respectfully Submitted,

                                         s/Daniel E. Gustafson
                                         Daniel E. Gustafson (#202241)
                                         Karla M. Gluek (#238399)
                                         David A. Goodwin (#386715)
                                         Raina C. Borrelli (#392127)
                                         **Gustafson Gluek PLLC**
                                         Canadian Pacific Plaza
                                         120 South Sixth Street, Suite 2600
                                         Minneapolis, MN  55402
                                         Telephone: (612) 333-8844

                                         *Attorneys for Plaintiffs*

29745