**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Kevin Scott Karsjens, David Leroy Gamble, Jr., Kevin John DeVillion, Peter Gerard Lonergan, James Matthew Noyer, Sr., James John Rud, James Allen Barber, Craig Allen Bolte, Dennis Richard Steiner, Kaine Joseph Braun, Christopher John Thuringer, Kenny S. Daywitt, Bradley Wayne Foster and Brian K. Hausfeld, and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>Lucinda Jesson, Dennis Benson, Kevin Moser, Tom Lundquist, Nancy Johnston, Janine Hebert, and Ann Zimmerman, in their individual and official capacities,<br><br>                    Defendants. | Civil No. 11-3659 (DWF/JJK)<br><br><br><br><br><br><br><br>**ORDER** |

On July 24, 2012, the Court certified this case as a class action on behalf of "[a]ll patients currently civilly committed in the Minnesota Sex Offender Program ("MSOP") pursuant to Minn. Stat. § 253B." (Doc. No. 203.) The litigation has proceeded, including, for example, appointment of an Advisory Task Force by the Commissioner of the Department of Human Services ("Commissioner"), (Aug. 15, 2012, Doc. No. 208), and settlement discussions overseen by Magistrate Judge Jeffrey J. Keyes. Pending before the Court are motions for a "preliminary injunction to provide less restrictive alternative treatment facilities and to re-evaluate class members," (Aug. 22, 2013, Doc. No. 310),

and for a "preliminary injunction for the appointment of a special master to oversee the Minnesota Sex Offender Program," (Aug. 22, 2013, Doc. No. 313).

This order is prompted by the Court's receipt from the Commissioner of a September 12, 2013 letter which she sent to state legislators describing the Department's intention to move individuals with intellectual disabilities currently committed to MSOP to the Department's facility called MSHS-Cambridge, which serves only those "Minnesotans who have developmental disabilities and exhibit severe behaviors which present a risk to public safety."

The letter announces that DHS has "identified a small group of clients who are low functioning and could be transferred to an existing DHS site that we expect to become available in the spring of 2014 for use by MSOP later in 2014." That site is Minnesota Specialty Health System – Cambridge.

The letter continues with reference to another lawsuit pending before this Court which involves the MSHS-Cambridge facility, *Jensen v. Department of Human Services*, No. 09cv1775 (DWF/FLN). *Jensen*, in important respects, as noted above, involves some individuals who have developmental disabilities and exhibit severe behaviors which present a risk to public safety. A settlement agreement in *Jensen* requires both facility-specific changes and systemic improvements in services and supports. The Commissioner sent her letter to this Court in connection with both *Jensen* and *Karsjens*. Referencing *Jensen*, the Commissioner identifies Cambridge as the destination for the MSOP individuals and states:

A separate effort to move clients with developmental disabilities out of Minnesota Specialty Health System – Cambridge has created the potential for a new alternative setting for MSOP. Current clients at Cambridge can be served more appropriately in more integrated settings in the community, consistent with the Supreme Court's *Olmstead* decision. We believe the Cambridge site can be repurposed to serve MSOP clients who are low functioning and medically needy.

Thus, the Department of Human Services is simultaneously planning for both the departure of residents with intellectual disabilities at the Cambridge facility and its "repurposing" of Cambridge for individuals in the MSOP program who also have intellectual disabilities.[1]

In *Jensen*, the Court recently ordered DHS to prepare a detailed implementation plan for reallocation of resources, including staff and funding, and the movement of clients to the community. Order of August 28, 2013 at 4 (Doc. No. 224). The plan is due to be filed within the next few weeks.

The Court agrees with the Commissioner that the two cases are now related. It is evident that DHS will want to also develop an implementation plan pertinent to the movement of the MSOP individuals to Cambridge. Such planning would inevitably affect, and be affected by, other changes at Cambridge. Cambridge has a significant budget.[2] It has substantial staffing, at least some (if not all) of whom are protected by a

---

[1] Assistant Commissioner Anne Barry explained in Jensen: "In connection with these changes, the Department intends to repurpose Cambridge's campus-based facility so that it no longer serves individuals who are solely civilly committed as developmentally disabled." June 4, 2013 letter to Court Monitor, in *Status Report on Compliance* (June 11, 2013, Doc. No. 217).

[2] "The Cambridge facility's annual budget for FY 2013 is $4,123,678. Its FY 2013
(Footnote Continued on Next Page)

3

state statute with a no-layoff clause.[3] The Court is not informed as yet of the extent to which the MSOP individuals moving to Cambridge will be served by existing Cambridge staff. The same physical plant, perhaps with some alterations, will remain in place. Most importantly, DHS, which currently provides treatment to Cambridge residents, plans to provide treatment to those who move to Cambridge from MSOP.[4] Clients at Cambridge and those moving from MSOP each have intellectual disabilities. For a variety of reasons, individuals in both groups have been labeled as being a risk to public safety.

Implementation of the *Jensen* orders, including the pending implementation plan for phasing Cambridge from its current use, has been overseen by David Ferleger, the Court's "independent consultant and court monitor," appointed by Order of July 17, 2012. (Doc. No. 159). His familiarity with Cambridge and with institutional issues is extensive.

The Court has determined that it will appoint Mr. Ferleger[5] as its technical advisor in this litigation.[6] He will be able to observe and assess the interface between the

---

(Footnote Continued From Previous Page)
*per diem* rate *per* client is $1,264 per day per client. Unlike other state-operated institutions, Minnesota does not receive any federal reimbursement for MSHS-Cambridge." *Jensen* Order of August 28, 2013 at 12 (Doc. No. 224).

[3]   Minnesota Statute § 252.025.

[4]   "The MSOP treatment team currently is supporting petitions of six clients who are intellectually disabled" to be transferred to Cambridge. Commissioner Letter of September 12, 2013.

[5]   The quality of Mr. Ferleger's work is familiar to the Court in *Jensen*. *See also*, *Jensen* Order of July 17, 2012 at 13, n.20 (Doc. No. 159) ("Mr. Ferleger is highly qualified. He is a seasoned attorney and author in the field of disability rights, disability class actions (having represented both state defendants and plaintiffs), and in serving the federal courts in several cases as special master, court-appointed monitor, and guardian ad litem. In the guardian ad litem case, he has advised the court regarding a settlement
(Footnote Continued on Next Page)

now-enmeshed *Jensen* and *Karsjens* plans for movement from and to the Cambridge facility, and to respond to the Court's needs for advice in this case from time to time.

Based upon the current status of the cases noted above, upon consideration of the entire record in this case, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. David Ferleger is appointed the Court's technical advisor in this litigation as a judicial adjunct.

---

(Footnote Continued From Previous Page)
(relevant to this one) involving a monetary payment and systemic change related to institutional abuse, and currently serves as technical advisor for implementation. Mr. Ferleger is familiar to the parties and the Court; as noted above, he was introduced to the Court by Defendants' counsel during the Settlement Agreement negotiation process and attended the settlement approval hearing. Also familiar with Mr. Ferleger are Dr. Colleen Wieck, Executive Director, Minnesota Governor's Council on Developmental Disabilities, and Roberta Opheim, Ombudsman Office for Mental Health and Developmental Disabilities.  Both assisted the parties in negotiating the Settlement Agreement and both are state officials.

[6]   The Court possesses the inherent authority to appoint a technical advisor. *E.g.*, *In re Peterson,* 253 U.S. 300, 312-13 (1920) ("Courts have . . . inherent power to provide themselves with appropriate instruments required for the performance of their duties. This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties"). *See, e.g., In re World Trade Center Disaster Site Litigation*, 2008 U.S. Dist. LEXIS 23818 (S.D.N.Y. 2008) ("The importance of these cases is clear, to the litigants and to society.  The ability of the court and counsel to cause them to progress towards resolution with due speed, economy and fairness depend very much on the ways that complex information can be organized and reported, reliably, responsively, and consistently.").  Courts often use monitors or advisors with regard to compliance with complex decrees. *E.g., Labor/Community Strategy Ctr. v. Los Angeles County Metro. Trans. Auth.*, 263 F.3d 1041, 1045 (9th Cir. 2001), *cert. denied*, 535 U.S. 951 (2002) (oversight of compliance with Settlement Agreement). *Harris v. Philadelphia*, 137 F.3d 209, 214 (3d Cir. 1998) (master to monitor city's compliance with consent decree).

2. The parties shall cooperate with Mr. Ferleger, and provide him with access to all pertinent facilities and documents (his access shall be subject to any protective order regarding client-identifying information). Mr. Ferleger may communicate with parties *ex parte*. He may make recommendations to the Court and the parties.

3. Mr. Ferleger will serve in this capacity *pro bono* with regard to the scope of responsibility described in this order. The Commissioner, or an individual designated by the Commissioner, shall communicate with Mr. Ferleger and determine whether they can agree on reimbursement of any out of pocket expenses he may incur.[7] At this time, the Court reserves decision on ultimate responsibility for such out of pocket expenses.

Dated: September 27, 2013          s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

---

[7] To spare DHS some costs, the Court suggests that, where expenses are incurred which relate to both *Jensen* and *Karsjens*, they may be split between the two cases.