UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin Scott Karsjens, David Leroy Gamble, Jr., Kevin John DeVillion, Peter Gerard Lonergan, James Matthew Noyer, Sr., James John Rud, James Allen Barber, Craig Allen Bolte, Dennis Richard Steiner, Kaine Joseph Braun, Brian Christopher John Thuringer, Kenny S. Daywitt, Bradley Wayne Foster, and Brian K. Hausfeld and others similarly situated,<br><br>                Plaintiffs,<br>    vs.<br><br>Lucinda Jesson, Dennis Benson, Kevin Moser, Tom Lundquist, Nancy Johnston, Jannine Hébert, and Ann Zimmerman, in their individual and official capacities,<br><br>                Defendants. | Civil File No. 11-cv-3659 (DWF/JJK)<br><br><br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION SEEKING RELIEF FOR SPOLIATION** |

## INTRODUCTION

A little over a year ago, Plaintiffs served Defendants with a 30(b)(6) deposition notice that asked the Minnesota Department of Human Services to produce a witness to testify about the Defendants' litigation hold, locations of documents, searches for responsive documents, and "[a]ll steps taken to implement litigation holds and/or to preserve documents that may be relevant to this action or any of the actions stayed by the Cout [sic] in relation to this action (see Doc. No. 145), including when the litigation hold

was instituted, how it was communicated to DHS and MSOP employees, and how documents subject to the litigation hold are stored." Ikeda Aff. Ex. 1. Unknown to Defendants, though, was the fact that at this time – indeed, even continuing to this very day – Plaintiffs themselves never issued a litigation hold. And, based on sworn testimony, it is indisputable that discoverable documents were destroyed.

Defendants, therefore, move the Court for an order granting relief based on Plaintiffs' spoliation, and ask this Court to grant the requested relief.

## FACTS

Nearly three years ago, on December 21, 2011, in *Karsjens et al. v. Jesson, et al.*, 11-CV-0359 (DWF/JJK), Plaintiffs filed a Complaint as a proposed class action. Doc. No. 1. *Thompson v. Ludeman, et al.*, 11-CV-01704 (DWF/JJK), another case brought by an MSOP client, had already been filed on June 27, 2011. On January 20, 2012, Gustafson Gluek PLLC agreed to appear in *Karsjens* and *Thompson*. On March 15, 2012, the First Amended Complaint was filed in the *Karsjens* matter. This Court certified as a class "all patients currently civilly committed in the Minnesota Sex Offender Program pursuant to Minn. Stat. § 253B" on July 24, 2012, and named the above named *Karsjens* Plaintiffs as class representatives. Doc. 203. At that time, the Gustafson Gluek law firm was named Class Counsel. Doc. 203.

Once discovery began, Plaintiffs served a Notice of 30(b)(6) Deposition of the Minnesota Department of Human Services seeking testimony and information regarding the existence and location of all documents that are responsive to Plaintiffs' requests for production, the searches conducted by Defendants to produce the documents requested by

Plaintiffs, as well as the document retention policies and the implementation of a litigation hold related to this case. Ikeda Aff. Ex. 1. Defendants designated Leah Flygare and Anita Moonen as the officials to testify regarding the matters noticed by Plaintiffs. Ikeda Aff. Ex. 2. On February 4, 2014, Plaintiffs deposed Leah Flygare, a staff attorney at the Department of Human Services regarding the implementation of the litigation hold and production of documents. Doc. 448. Plaintiffs also deposed Anita Moonen, the Minnesota Sex Offender Program Records Manager, regarding the document retention policies for the Department of Human Services and the Minnesota Sex Offender Program. Doc. 448.

On April 25, 2014, Plaintiffs filed a motion to compel asking the Court to order Defendants to implement a "comprehensive document retention hold that includes all relevant documents in the custody or control of any past or present employee of the MSOP…" and provide Plaintiffs with a list of all individuals who received the hold. Doc. 448. Plaintiffs further asked that Defendants provide written confirmation that no potentially relevant documents have been lost after the distribution of a litigation hold in "this matter or in any matter that raised or raises similar issues;" and for any documents that were lost, Plaintiffs requested the Court order that Defendants provide a detailed description of each document, when it was deleted and how it was deleted. Doc. 448. Defendants opposed Plaintiffs' motion to compel and on May 7, 2014, this Court partially granted Plaintiffs' motion, and required Defendants to provide Plaintiffs with (1) a list of the recipients of each litigation hold related to this matter, and (2) if a document was lost, a detailed description of each document lost, the date of the deletion

and the circumstance under which the document was deleted.  Doc. No. 460.  All other requested relief was denied.  Doc. 460.

On September 24, 2014, plaintiff Kaine Braun testified at his deposition that he did not begin preserving documents until approximately one year prior to his deposition,[1] and that during the course of the litigation he had destroyed documents because he had not been told what documents to keep.  Ikeda Aff. Ex. 4, Braun Dep. Tr. 144:23-148:11, Sept. 24, 2014; Doc. 667.  After receiving this information, Defendants repeatedly asked Plaintiffs to confirm in writing that no other named Plaintiffs destroyed discoverable documents, and Defendants requested a copy of any litigation hold Plaintiffs' counsel sent to the named Plaintiffs.  Doc. 667, at 2 n.1.  Plaintiffs contend that Mr. Braun only destroyed documents that he deemed not relevant.[2]  Mr. Braun's sworn testimony, however, is that he destroyed his journals, treatment assignments, memos, and "stuff like that."  Ikeda Aff. Ex. 4, Braun Dep. Tr. 145:13-146:5.  Sex offender treatment provided at MSOP is plainly and indisputably at issue in this case.  *See, e.g.,* Doc. No. 635, Third Amended Complaint, at ¶¶ 254-68, 326-52; Ikeda Aff. Ex. 5, October 31, 2014 letter to Judge Keyes from Scott Ikeda.

---

[1] Plaintiffs' counsel recently told the Court that Mr. Braun's "statement in his deposition that he was not told until one year ago to retain documents is incorrect."  Doc. 671 at 8.  Not surprisingly, Defendants then asked Plaintiffs to "advise what other testimony by any of the named plaintiffs that counsel know to be incorrect and explain the basis for the incorrect sworn testimony."  Ikeda Aff. Ex. 3, at 5.  Plaintiffs never answered.

[2] Curiously, Plaintiffs' counsel said in the same letter to the Court that Mr. Braun "has since been informed by Plaintiffs' counsel to retain all treatment material."  Doc. 671, at 7.

4

Concerned about Plaintiffs' improper document destruction, Defendants requested a copy of Plaintiffs' litigation hold. Ikeda Aff. Ex. 3 at 4. In a phone conference on December 4, 2014, Plaintiffs' counsel disclosed that no litigation hold was issued in this matter, so Plaintiffs could not provide a copy to Defendants. Ikeda Aff. Ex. 3 at 4. And, although Plaintiffs represented to the Court on December 3 that they "confirmed with the named Plaintiffs a number of times that they have not destroyed documents related to this matter," (Doc. No. 671, at 7), Defendants also pointed out on December 5 that it did not appear that other named plaintiffs produced all of their "treatment assignments, journals, [and] stuff like that…," Ikeda Aff. Ex. 3, at 4. Presumably in response to this concern, Defendants learned on December 8 that Plaintiffs had treatment related documents that were never produced. Ikeda Aff. Ex. 6, emails between David Goodwin and Scott Ikeda, dated December 8 and 9, 2014. ("As a follow up to our conversation this afternoon, we will get the individual paper treatment assignments and files from our named Plaintiffs and produce them to you by Friday….[a]lso on Friday, we will let you know which named Plaintiffs do not participate in treatment journaling.").[3]

---

[3] Defendants would have preferred to bring their motion after Plaintiffs' promised December 12 document production and asked if Plaintiffs would be willing to extend the non-dispositive motion deadline to allow this, but Plaintiffs refused. Ikeda Aff. Ex. 7, emails between Scott Ikeda and Amanda Williams, December 9, 2014, without attachment.

**ARGUMENT**

**I.   PLAINTIFFS HAD AN OBLIGATION TO PRESERVE EVIDENCE.**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 (SRN/SER) slip op., 2014 WL 1309095, at *15 (D. Minn. April 1, 2014) (internal citations omitted). When determining whether spoliation occurred, the Court must first determine when the obligation to preserve evidence was triggered. *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 587 (D. Minn. 2005). The duty to preserve evidence arises when a party has notice that the evidence is relevant to litigation or the party should know that evidence may be relevant to future litigation. *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 241 F.R.D. 567, 570 (D. Minn. 2007).

Plaintiffs filed this case on December 21, 2011, and Plaintiffs' Counsel began representing Plaintiffs on January 20, 2012. In Plaintiffs' initial complaint, Plaintiffs alleged that the treatment they were receiving at the Minnesota Sex Offender Treatment Program was inadequate. Doc. No. 1 at 20 – 29, 42. While Plaintiffs' likely were aware that the treatment records they had were relevant at some time prior to the actual filing of the initial complaint,[4] at the very latest, Plaintiffs should have known that their treatment

---

[4] Mr. Lonergan testified that he drafted the first complaint around "late 2009" and then enlisted other to help edit and change the complaint before it was filed. Ikeda Aff. Ex. 8, Lonergan Dep. Tr. 16:14-18:6. Mr. Braun testified that at least four to five months before the complaint was filed in December, he reviewed drafts of the complaint from Mr. Karsjens and Mr. Lonergan. Ikeda Aff. Ex. 4, Braun Dep. Tr. 10:19-11:25.

records, journals, and assignment were relevant to their lawsuit, when Plaintiffs filed this suit alleging a lack of treatment at MSOP on December 21, 2011. And, Plaintiffs' counsel at a minimum should have known that all of Plaintiffs' treatment journals, assignments and records were relevant to Plaintiffs' allegations at least as early as January 20, 2012, when they were appointed counsel.

It is indisputable that the treatment provided to Plaintiffs at MSOP is at issue in this case. *See, e.g.,* Doc. No. 635, Third Amended Complaint, at ¶¶ 254-68, 326-52; Ikeda Aff. Ex. 5, October 31, 2014 letter to Judge Keyes from Scott Ikeda. It is, therefore, inexplicable why at least one of the named plaintiffs continued to destroy documents related to his treatment for nearly the first two years of the litigation, whether because he didn't believe the documents were relevant, or because he wasn't actually instructed by his attorneys to keep his documents until then. This destruction of relevant treatment records by a named plaintiff in the case constitutes spoliation.[5]

## II.   RELIEF IS WARRANTED BECAUSE DEFENDANTS ARE PREJUDICED BY THE SPOLIATION OF EVIDENCE.

A court can order relief "when a party (1) destroys (2) discoverable material (3) which the party knew or should have known (4) was relevant to pending, imminent or reasonably foreseeable litigation." *Ewald*, 2014 WL 1309095, at *15. (quoting *Lexis-*

---

[5] As indicated above, after being alerted to the lack of treatment documents in Plaintiffs' production, which led Defendants to believe the spoliation problem extended beyond Mr. Braun, Plaintiffs' counsel informed Defendants on December 8 that Plaintiffs were going to produce "individual paper treatment assignments and files from [the] named Plaintiffs … by Friday." Ikeda Aff. Ex. 6. Until Plaintiffs actually produce the documents they previously failed to produce, Defendants are unable to accurately determine the breadth of Plaintiffs' spoliation.

7

*Nexis v. Beer*, 41 F. Supp. 2d 950, 954 (D. Minn. 1999). Relief for spoliation is warranted when the moving party can show that it has suffered prejudice as a result of the spoliation. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004). Where the evidence destroyed may have proved helpful to the non-spoliating party's defense of the case, and the information is not available to that party through other means, prejudice exists. *See*, *E*Trade*, 230 F.R.D. at 592; *Stevenson*, 354 F.3d at 748; *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267-68 (8th Cir. 1993); *Ewald*, 2014 WL 1309095, at *18-*19.

First, with respect to the first two elements, there is no doubt that at least one of the named plaintiffs permanently destroyed discoverable material. Ikeda Aff. Ex. 4, Braun Dep. 146:17-146:22 (testifying that destroyed documents are not available on computer or elsewhere).

Second, with respect to the third and fourth elements, Mr. Braun knew or should have known that the treatment documents he destroyed during the pendency of the litigation was relevant to the litigation. Plaintiffs' argument that Mr. Braun only "threw away material that he did not deem to be relevant to this matter" misses the mark entirely. Doc. No. 671, at 7. It is not Mr. Braun's subjective belief about relevance that matters, but what he knew or should have known, especially after having counsel appointed. Indeed, Mr. Braun's and his lawyer's positions on this point are irreconcilable: either Mr. Braun was not told of his obligation by his lawyers until nearly two years into the case (which was his sworn testimony) or he was told of his obligation to retain

8

documents (his lawyers' position) and he failed to do so. Under either set of facts, Mr. Braun knew or should have known to retain documents related to his treatment.

Finally, Defendants are prejudiced by Mr. Braun's destruction of evidence that would have been helpful to Defendants' defenses against Plaintiffs' inadequate treatment claims. For example, Defendants will never fully know Mr. Braun's treatment progress where he destroyed his own treatment documents. In addition, Defendants will never know Mr. Braun's views of his treatment progress, which could possibly be found in his journals, assignments, or "stuff like that." Plaintiffs should not be rewarded for the fact that one of the named plaintiffs destroyed treatment documents in a case, in part, about treatment. Defendants are entitled to some form of relief for this obvious spoliation.

### III. PLAINTIFFS SHOULD INVESTIGATE AND REPORT TO DEFENDANTS AND THE COURT SO THE COURT CAN DETERMINE APPROPRIATE RELIEF.

Plaintiffs should be ordered to investigate and disclose the extent of destruction and non-production of documents to the Defendants and the Court. After the extent of the destruction has been determined, the Court should then consider whether an adverse inference is appropriate.

A court has the authority, under its inherent power to control litigation, to grant relief for spoliation. See *Stevenson*, 354 F.3d 739. The court may grant a variety of forms of relief, and may exercise its discretion to choose the most appropriate form of relief under the circumstances. *E*Trade*, 230 F.R.D. at 592. The relief available includes "awarding attorney fees and costs, imposing an adverse inference instruction to the jury,

directing factual findings, and finding a default judgment against the spoliator." *Id.* at 587, citing Fed. R. Civ. P. 37(b)(2).

Defendants are entitled to the same relief the Court granted Plaintiffs in May 2014 following their motion to compel preservation and production of documents. Doc. No. 447. The Court should order:

- "[Plaintiffs] must provide [Defendants]' counsel with a list of the recipients of each of the [verbal] litigation holds[6] issued relating to this matter;"
- "In addition, for any documents that [Plaintiffs] discover have been lost, [Plaintiffs] shall provide [Defendants] with a detailed description of each document, the circumstances under which it was deleted, and the date of the deletion."

Doc. No. 461. And, because Plaintiffs elected not to issue written litigation holds, Defendants should also be permitted to depose an individual who has knowledge of which Plaintiffs were told, what Plaintiffs were told, when they were told, and how they were told of their obligation to retain discoverable information, including steps Plaintiffs took to actually preserve and retain discoverable information. The topics of a deposition would be similar in scope to the depositions Plaintiffs took of the Department of Human Services in February 2014.

---

[6] As the Court may be aware, Defendants produced copies of the relevant litigation holds they issued; indeed, the hold's breadth and depth were the subject of Plaintiffs' earlier motion. Doc. No. 448, at 16 - 17.

After Plaintiffs report to the Court and Defendants, the Court can then consider additional relief for the spoliation. Relief for spoliation can require ""a finding of intentional destruction indicating a desire to suppress the truth."" *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) quoting *Stevenson*, 354 F.3d. at 746. "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound*, 485 F.3d at 1035 (internal citation omitted).

One available form of relief includes prohibiting the spoliating party from presenting testimony, argument or other evidence regarding the claims or defenses related to the spoliated evidence. Fed. R. Civ. P. 37(b)(2). Before an adverse inference instruction is warranted, the district court must make two findings: first "there must be a finding of intentional destruction indicating a desire to suppress the truth" and second "there must be a finding of prejudice to the opposing party." *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) quoting *Stevenson*, 354 F.3d. at 746, 748.

The Eighth Circuit, and this Court, however, have acknowledged that bad faith is not always necessary to grant relief for spoliation. *See Stevenson*, 354 F.3d. at 750; *Ewald*, 2014 WL 1309095, at *16. In *Stevenson*, the Eighth Circuit concluded that "[s]anctioning the ongoing destruction of records during litigation and discovery by imposing an adverse inference instruction is supported by either the court's inherent power or Rule 37 of the Federal Rules of Civil Procedure, even absent an explicit bad faith finding…" 354 F.3d. at 750.

Only when Defendants tried to understand the extent of Plaintiffs' document destruction were Defendants told about documents related to treatment at MSOP, which were in Plaintiffs' possession but never produced to Defendants. Ikeda Aff. Ex. 6. If Defendants had not pursued the issue of the destruction of documents, they would have never been aware of the fact that many of the Plaintiffs' treatment journals and other documents were not produced. Because Plaintiffs did not produce these documents, the full extent of Plaintiffs' document destruction is still unknown. Once the extent of destruction has been determined, the Court can then determine whether an adverse inference is warranted.

## CONCLUSION

For the reasons stated above, Defendants ask that the Court grant Defendants' motion.

Dated: December 10, 2014

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota

**s/Scott H. Ikeda**
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

NATHAN BRENNAMAN
Deputy Attorney General
Atty. Reg. No. 0331776

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

ADAM WELLE
Assistant Attorney General
Atty. Reg. No. 0389551

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1385 (Voice)
(651) 282-5832 (Fax)
(651) 296-1410 (TTY)
scott.ikeda@ag.state.mn.us

Attorneys for Defendants