UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin Scott Karsjens, David Leroy Gamble, Jr., Kevin John DeVillion, Peter Gerard Lonergan, James Matthew Noyer, Sr., James John Rud, James Allen Barber, Craig Allen Bolte, Dennis Richard Steiner, Kaine Joseph Braun, Christopher John Thuringer, Kenny S. Daywitt, Bradley Wayne Foster, Brian K. Hausfeld, and all others similarly situated, | Civil No. 11-3659 (DWF/TNL) |
| Plaintiffs, | |
| v. | **ORDER** |
| Emily Johnson Piper, Kevin Moser, Peter Puffer, Nancy Johnston, Jannine Hébert, and Ann Zimmerman, in their official capacities, | |
| Defendants. | |

---

Daniel E. Gustafson, Esq., Karla M. Gluek, Esq., David A. Goodwin, Esq., Raina Borrelli, Esq., and Eric S. Taubel, Esq., Gustafson Gluek PLLC, counsel for Plaintiffs.

Scott H. Ikeda, Adam H. Welle, and Aaron Winter, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Defendants.

---

# INTRODUCTION

This matter is before the Court on the parties' case status briefs submitted in response to the Court's March 14, 2017 Order. (*See* Doc. Nos. 1072, 1074-79.) In that order, the Court directed the parties to establish a briefing schedule on four issues:

(1) whether this case should remain stayed, in whole or in part, pending further appeal; (2) whether the other stayed cases in the District with substantially similar claims should remain stayed pending further appeal; (3) the next steps in this case on remaining Phase One claims if these claims are not stayed; and (4) the next steps in this case on Phase Two claims if these claims are not stayed. (Doc. No. 1072.) The parties have filed opening and response briefs on these issues. (Doc. Nos. 1074-79.) For the reasons set forth below, the Court will stay this case in its entirety and review the propriety of continuing the stay in ninety days.

## BACKGROUND

### I. General Background

The Court has recited the factual background underlying Plaintiffs' claims in prior orders. (*See generally* Doc. No. 966.) In short, Plaintiffs' Third Amended Complaint asserts a class action on behalf of committed individuals residing at the Minnesota Sex Offender Program ("MSOP") to challenge Defendants' implementation of the Minnesota Civil Commitment and Treatment Act, Minnesota Statute Chapter 253D, and operation of MSOP. (*See generally* Doc. No. 635.)[1]

---

[1] Plaintiffs' Third Amended Complaint, filed on October 28, 2014, asserts the following thirteen claims: (I) Minnesota Statute § 253D is facially unconstitutional; (II) Minnesota Statute § 253D is unconstitutional as applied; (III) Defendants have failed to provide treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (IV) Defendants have failed to provide treatment in violation of the MCTA; (V) Defendants have denied Plaintiffs the right to be

(Footnote Continued on Next Page)

## II. Procedural Background

Pursuant to the Court's November 7, 2014 Final Pretrial Order, trial in this matter was split into two phases. (Doc. No. 647.) The Court explained:

> Phase One will be comprised of the presentation of evidence and argument on the following issues: (1) whether Minnesota Statute Chapter 253D is unconstitutional on its face and as applied; (2) whether the treatment provided is constitutionally and/or statutorily infirm; (3) whether the treatment program complies with court-ordered treatment; (4) whether confinement is tantamount to unconstitutional punitive detention; and (5) whether less restrictive alternatives to confinement are constitutionally required.
> . . .
> Phase Two shall be comprised of the presentation of evidence and argument on the following issues: (1) whether confinement conditions constitute unconstitutional restrictions on freedom of speech, religion, and association; (2) whether confinement procedures constitute unconstitutional searches and seizures; (3) whether the treatment program and its

---

(Footnote Continued From Previous Page)
free from punishment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VI) Defendants have denied Plaintiffs the right to less restrictive alternative confinement in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VII) Defendants have denied Plaintiffs the right to be free from inhumane treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VIII) Defendants have denied Plaintiffs the right to religion and religious freedom in violation of the First and Fourteenth Amendments to the United States Constitution; (IX) Defendants have unreasonably restricted free speech and free association in violation of the First Amendment to the United States Constitution and the Minnesota Constitution; (X) Defendants have conducted unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution; (XI) Defendants have violated court ordered treatment; (XII) individual Defendants have breached Plaintiffs' contractual rights; and (XIII) individual Defendants have tortiously interfered with contractual rights and have intentionally violated Minn. Stat. § 253B.03, subd. 7. (Doc. No. 635 at 59-84.)

implementation constitutes a breach of contract, tortious interference with contract, and intentional violation of Minnesota Statute Section 253B.03(7).

(*Id.* at 2.) Trial proceedings in Phase One commenced on February 9, 2015 and concluded on March 18, 2015. (*See* Doc. Nos. 839; 908.) On June 17, 2015, the Court issued its Findings of Fact, Conclusions of Law, and Order, granting Plaintiffs' request for declaratory relief with respect to Counts I and II of their Third Amended Complaint. (Doc. No. 966 at 75.) The Court determined that it did not need to address Counts III, V, VI, and VII "because any remedy fashioned will address the issues raised in the remaining Phase One Counts." (*Id.* at 65.) The Court noted that its "determination that the MSOP and its governing civil commitment statutes are unconstitutional concludes Phase One of this case." (*Id.* at 5.) The Court also reiterated that "Counts VIII, IX, and X, will be tried in the second phase of trial ('Phase Two')."[2] (*Id.* at 76.) On October 29, 2015, the Court issued a First Interim Relief Order directing injunctive relief to remedy the court's findings of unconstitutionality. (Doc. No. 1035.)

On October 29, 2015, Defendants appealed the Court's June 17, 2015 and October 29, 2015 Orders. (Doc. No. 1036.) On January 3, 2017, the Eighth Circuit issued an opinion "revers[ing] the district court's finding of a constitutional violation and vacat[ing] the injunctive order." *Karsjens v. Piper*, 845 F.3d 394, 411 (8th Cir. 2017). It

---

[2] On August 10, 2015, Counts IV, XI, XII, and XIII were dismissed with prejudice. (Doc. No. 1005.)

remanded the case to this Court "for further proceedings on the remaining claims in the Third Amended Complaint." *Id.* The Eighth Circuit declined to rehear the case en banc. *See Karsjens v. Piper*, No. 15-3485, Entry ID: 4503853 (8th Cir. Feb. 22, 2017). As noted in Plaintiffs' March 31, 2017 case status brief, Plaintiffs plan to file a petition for writ of certiorari with the United States Supreme Court prior to a May 23, 2017 deadline. (Doc. No. 1074 at 4.)

The Court has yet to rule on seven remaining claims. The following claims remain in Phase One: Count III (Fourteenth Amendment Failure to Provide Treatment); Count V (Fourteenth Amendment Freedom from Punishment); Count VI (Fourteenth Amendment Denial of Less Restrictive Alternatives); and Count VII (Fourteenth Amendment Freedom From Inhumane Treatment). The following claims remain in Phase Two: Count VIII (First and Fourteenth Amendment Religious Freedom); Count IX (First Amendment Free Speech and Association); Count X (Fourth Amendment Search and Seizure).

### III. Individual Cases

On July 24, 2012, the Court granted Plaintiffs' Amended Motion for Class Certification in this case, certifying the following class: "All patients currently civilly committed in the Minnesota Sex Offender Program pursuant to Minn. Stat. § 253B." (Doc. No. 203 at 11.) On October 27, 2014, then-Chief Judge Michael J. Davis issued an order staying "[a]ll current and future civil rights cases brought by an individual or group of individuals who has or have been civilly committed to the MSOP that are sufficiently

related to [*Karsjens*] . . . pending resolution of the [*Karsjens*] litigation, or until further order of the Court." (Doc. No. 634 at 20-21.) In its caption, this order identified seventy-four such cases. (*See id.*) On August 20, 2015, Chief Judge John R. Tunheim issued another order staying such cases, noting that "[t]he *Karsjens* litigation remains ongoing and unresolved." (Doc. No. 1011 at 22.) In its caption, this order identified eighty-three such cases, including many of the cases that had previously been stayed. (*See generally id.*; Doc. No. 634.)

On April 14, 2016, Chief Judge Tunheim lifted the stays previously imposed in sixteen individual cases. (Doc. No. 1064.) The order explained:

> Notwithstanding the continuing litigation in *Karsjens*, the undersigned finds it appropriate to lift the stays previously imposed in the above-entitled matters. The claims in these cases were not integral to Judge Donovan W. Frank's liability and relief orders in *Karsjens*. As a result, it is unlikely that the claims in these cases will be affected by the Eighth Circuit's ultimate ruling in the *Karsjens* claims on appeal. Further, because it is unclear at this juncture whether or when a Phase II trial in *Karsjens* might occur, any similarity between the above-entitled cases and *Karsjens* and the possibility of inconsistent rulings is outweighed by the prejudice to the Plaintiffs in the above-entitled matters of continuing to stay these cases pending subsequent litigation in *Karsjens*.

(Doc. No. 1064 at 6 (footnote omitted).) Unless a stay has been otherwise lifted by separate order in an individual case, the previous District-wide stay orders remain in effect for cases not identified in Chief Judge Tunheim's April 14, 2016 Order.

6

# DISCUSSION

## I. Phase One

The parties agree that the Court should stay any remaining Phase One issues at this time. The parties disagree, however, on the next step if the Court decides to address the remaining Phase One claims at this time. Defendants argue that the remaining Phase One claims should be dismissed because the Eighth Circuit's opinion disposes of these claims. According to Defendants, the Eighth Circuit implicitly decided the remaining Fourteenth Amendment claims in Defendants' favor. Plaintiffs dispute this position and argue that they are entitled to a complete analysis and ruling on Counts III, V, VI, and VII.

The Court agrees that staying the remainder of Phase One is proper in light of Plaintiffs' intention to file a petition for certiorari with the United States Supreme Court. The Court declines to take a position at this time on the status of Counts III, V, VI, and VII in light of the Eighth Circuit's opinion.

## II. Phase Two

The parties disagree about the proper next step in Phase Two. Plaintiffs argue that Phase Two should be stayed while Defendants urge the Court to permit Phase Two to move forward. The parties also disagree over the next steps if Phase Two is not stayed. Plaintiffs ask the Court to permit additional discovery whereas Defendants object to additional discovery and seek permission to file a renewed summary judgment motion on the Phase Two counts. The Court will first address whether to stay Phase Two.

## A. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A stay determination implicates a court's "power to coordinate the business of the court efficiently and sensibly." *Landis*, 299 U.S. at 255. In exercising this power, the court retains "broad discretion to stay proceedings when doing so is appropriate to control its docket." *Daywitt v. Minn.*, 2016 WL 3004626, at *5 (D. Minn. May 24, 2016).

Notwithstanding this discretion, the party requesting a stay "bears the burden of establishing its need." *Kreditverein der Bank Austria Creditanstalt fur Niederosterreich und Bergenland v. Nejezchleba*, 477 F.3d 942, 945 n.3 (8th Cir. 2007). Specifically, the proponent "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damages to some one else." *Landis*, 299 U.S. at 255.

In evaluating a stay, a court should consider multiple relevant factors including "maintaining control of its docket, conserving judicial resources, and the important interest of providing for the just determination of cases pending before the court." *Daywitt*, 2016 WL 3004626, at *5. A stay may be warranted where the matter implicates "rights which are inextricably tied to [a] pending . . . claim in [another court]." *See*

*Kemp v. Tyson Seafood Grp., Inc.*, 19 F. Supp. 2d 961, 965 (D. Minn. 1998) (concluding that all of the relevant factors "but particularly the interests of judicial economy" justified a stay). Ultimately, the stay determination "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

The Supreme Court has stated that "[e]specially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 256. In "weighty and unusual" cases such as those involving "novel problems of far-reaching importance to the parties and the public," a stay request "will not always fit within the mould appropriate to an application for such relief in a suit upon a bill of goods." *Id.* Even in such cases, however, a stay must be "kept within the bounds of moderation." *Id.* To moderate the effect of a stay, a court may impose a stay of limited duration after which the status of the case will be reviewed. *See Kemp*, 19 F. Supp. 2d at 966 (ordering that the parties contact the court within sixty days of its order to prevent the case from "languish[ing] in an indefinite [s]tay").

### B. Discussion

Plaintiffs argue that the remaining claims in both Phase One and Phase Two should be stayed "[u]ntil the Supreme Court either hears Plaintiffs' case or denies Plaintiffs' petition for certiorari." (Doc. No. 1074 at 4.) With respect to Phase Two,

9

Plaintiffs suggest that the Court's resolution of the remaining claims would "benefit from guidance on the standard of review for as-applied claims." (*Id.* at 6.) Plaintiffs contend that "[a] decision from the Supreme Court on this issue 'would [] settle the issue here or guide this Court in further disposition of the matter,' thus rendering a stay appropriate." (*Id.* at 6 (quoting *United States v. Brennan*, 134 F. Supp. 42, 54 (D. Minn. 1955)).) Plaintiffs also suggest that the facts underlying Plaintiffs' Phase Two claims may be impacted by a Supreme Court decision in Plaintiffs' favor. For example, Plaintiffs point out that the Court's original injunctive relief order would result in the movement of more individuals to less restrictive alternative facilities which could affect the facts underlying their First and Fourth Amendment claims. In short, Plaintiffs argue, "[s]taying Counts VII, IX, and X is the most efficient use of judicial resources and increases the likelihood of just and consistent decisions for all similar cases pending in this district." (Doc. No. 1078 at 4.)

Defendants, on the other hand, argue that the Court should not stay Phase Two at this time because Plaintiffs have not met their burden to show hardship absent a stay. Defendants suggest that Plaintiffs' appeal will have no effect on the First and Fourth Amendment claims involved in Phase Two. According to Defendants, "[a]llowing Plaintiffs to delay Phase Two is unjust, needlessly requires Defendants and the Court to continue to expend resources on numerous other cases brought by individual MSOP clients, and risks inconsistent decisions." (Doc. No. 1075 at 10.) Defendants identify

approximately sixty-nine pending individual cases that involve claims related to Phase Two. Defendants argue that it is unfair and will result in significant hardship to require Defendants to repeatedly litigate these issues after they were already subject to discovery. In particular, Defendants contend that a stay "would needlessly require the Court to rule upon similar or identical issues, delay resolving the class' First and Fourth Amendment claims, and unfairly require Defendants to continue to litigate dozens of individual cases." (*Id.* at 12.)

The Court concludes that staying Phase Two is proper at this time. In light of the parties' agreement that Phase One should be stayed and based on Plaintiffs' intention to seek further appellate review, a stay will ensure that this case proceeds with "economy of time and effort for [the Court], for counsel, and for [the] litigants." *See Cottrell*, 737 F.3d at 1248 (quoting *Landis*, 299 U.S. at 254). Although Phase One and Phase Two involve distinct constitutional claims, the claims in both phases are inextricably related. *See Kemp*, 19 F. Supp. 2d at 965. For example, in analyzing Plaintiffs' First Amendment freedom of speech and association claims in Count IX at the summary judgment stage, the Court concluded that "considering Plaintiffs' claims with respect to restrictions on their ability to freely associate and speak *and in light of all of Plaintiffs' allegations regarding their conditions of confinement*, . . . Plaintiffs have presented sufficient evidence to support a claim." (Doc. No. 828 at 36 (emphasis added).) Likewise, with respect to Count X, the court held that "[c]onsidering Plaintiffs' Fourth Amendment claim *in*

*conjunction with other evidence presented by Plaintiffs surrounding the punitive nature of their confinement*, the Court determines that a genuine issue of material fact exists as to whether the search policies in this case are reasonable and appropriate." (*Id.* at 38-39 (emphasis added).) Because the punitive nature of the program was integral to the Court's original constitutional determinations in Phase One, the Court agrees that Plaintiffs' further appeal of Phase One issues will likely impact the Court's ultimate analysis of Plaintiffs' Phase Two claims. The Court also agrees with Plaintiffs that the possibility of changed factual circumstances following appeal weighs in favor of a stay.

Although continuing to stay Phase Two may not be appropriate going forward depending on the timing of a possible Supreme Court decision, the Court discerns little hardship to either party if Phase Two is temporarily stayed until the status of Phase One becomes clearer. In particular, the Court does not agree with Defendants that they will face hardship in being required to litigate numerous individual cases raising issues similar to Plaintiffs' Phase Two claims. First, the majority of the individual cases identified by Defendants raising First and Fourth Amendment claims are in fact currently stayed. Thus, Defendants are not presently litigating or defending these cases at all. Second, the Court is not persuaded that the class-wide claims in Phase Two challenging MSOP policies and practices will necessarily resolve the individual cases raising First and Fourth Amendment claims. The Court agrees that any individual cases raising sufficiently-related claims challenging MSOP policies and practices should be stayed

pending the Court's determination of Phase Two issues in this case in order to avoid inconsistent rulings. To the extent any such cases are not currently stayed under the District-wide stay orders, Defendants may of course seek to stay those cases individually. *See, e.g.*, *Daywitt*, 2016 WL 3004626 (evaluating the State defendants' request to stay another MSOP case raising religious freedom claims).

The Court notes that it is not evaluating the typical circumstance in which a party requests a stay pending the resolution of related legal issues by a different court in a separate case. *See, e.g.*, *Landis*, 299 U.S. at 249 ("The controversy hinges upon the power of a court to stay proceedings in one suit until the decision of another, and upon the propriety of using such a power in a given situation."); *see also Kemp*, 19 F. Supp. 2d 961; *Daywitt*, 2016 WL 3004626. Rather, the Court is considering whether to stay the second phase of this case in light of the impending appeal of this Court's conclusion in the first phase of litigation. In its June 17, 2015 Order, the Court explained that its "determination that the MSOP and its governing civil commitment statutes are unconstitutional concludes Phase One of this case." (Doc. No. 966 at 5.) That precise determination has since been reversed by the Eighth Circuit and may be subject to further appellate review by the United States Supreme Court. In these circumstances, the relevant factors of docket control, conservation of judicial resources, and the just resolution of pending cases all weigh in favor of a stay. *See Daywitt*, 2016 WL 3004626, at *5.

In this "weighty and unusual" case involving "novel problems of far-reaching importance to the parties and the public," *see Landis*, 299 U.S. at 256, the Court is persuaded that staying Phase Two for a moderate length of time is the most fair, equitable, and efficient course. The Court will stay this matter in its entirety for ninety days. After this time, the parties shall meet and confer and contact the Court to schedule a telephone status conference to discuss next steps. The Court declines to take a position at this time regarding the next steps in Phase Two once the stay is ultimately lifted.

## III. Individual Cases

To the extent any cases in the District raise substantially similar claims to *Karsjens* Phase One or Phase Two, it is this Court's opinion that those cases should be or remain stayed. It is, of course, up to each individual judge's discretion to impose or lift a stay in light of subsequent developments. In light of this Court's determination that this case should remain stayed in its entirety at this time, however, the Court suggests that all sufficiently related cases also remain stayed.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. This matter is **STAYED** in its entirety.

2. The parties shall meet and confer to discuss the status of the case and contact the Court to arrange a telephone status conference within ninety days of this order.

Dated: May 3, 2017               s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge