# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin Scott Karsjens, David Leroy Gamble, Jr., Kevin John DeVillion, Peter Gerard Lonergan, James Matthew Noyer, Sr., James John Rud, James Allen Barber, Craig Allen Bolte, Dennis Richard Steiner, Kaine Joseph Braun, Christopher John Thuringer, Kenny S. Daywitt, Bradley Wayne Foster, Brian K. Hausfeld, and all others similarly situated, | Civil No. 11-3659 (DWF/TNL) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Emily Johnson Piper, Kevin Moser, Peter Puffer, Nancy Johnston, Jannine Hébert, and Ann Zimmerman, in their official capacities, | |
| Defendants. | |

---

Daniel E. Gustafson, Esq., Karla M. Gluek, Esq., David A. Goodwin, Esq., Raina Borrelli, Esq., and Eric S. Taubel, Esq., Gustafson Gluek PLLC, counsel for Plaintiffs.

Scott H. Ikeda, Adam H. Welle, and Aaron Winter, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court following remand on three separate matters. First, the parties dispute the proper disposition of Plaintiffs' remaining Phase One counts in light of the Eighth Circuit's decision. (*See* Doc. Nos. 1095, 1097, 1100, 1102.) Second, Defendants seek summary judgment on all Phase Two counts. (*See* Doc. Nos. 1095,

1097, 1102, 1105.)  Plaintiffs oppose summary judgment and assert that the class should

be decertified with respect to these counts.  (*See* Doc. Nos. 1100, 1106.)  Third,

Defendants ask the Court to apportion the cost of the Rule 706 Experts to Plaintiffs.

(Doc. Nos. 1095, 1097, 1102.)  Plaintiffs oppose this request.  (Doc. No. 1100.)  For the

reasons set forth below, all remaining claims raised in Plaintiffs' Third Amended

Complaint shall be dismissed with prejudice.  The Court shall reserve determination on

the final apportionment of Rule 706 Expert costs.

## BACKGROUND

This case has an extensive and complex history which has been discussed at length

in prior orders.  The Court incorporates by reference the factual background in the

Court's February 2, 2015 Memorandum Opinion and Order addressing Defendants' prior

Motion for Summary Judgment (Doc. No. 828), as well as the factual findings from

Phase One of trial contained in the Court's June 17, 2015 Findings of Fact, Conclusions

of Law, and Order (Doc. No. 966).  The Court assumes familiarity with these and other

relevant orders and only briefly summarizes the relevant background here.

Plaintiffs are individuals residing at the Minnesota Sex Offender Program (the

"MSOP") who are civilly committed under Minnesota Statute § 253D, the Minnesota

Civil Commitment and Treatment Act ("MCTA").  (*See* Doc. No. 635 ("Third Am.

Compl") ¶ 2.)  The fourteen named Plaintiffs represent a class certified pursuant to

Federal Rule of Civil Procedure 23(b)(2), consisting of "[a]ll patients currently civilly

committed to [the MSOP] pursuant to Minn. Stat § 253B."  (*See* Doc. No. 203.)

Plaintiffs' lawsuit challenges the constitutionality of the MCTA on its face and as

applied, as well as various aspects of the MSOP's operation and treatment regime. (*See generally* Third Am. Compl. ¶ 1.)

Specifically, Plaintiffs' Third Amended Complaint raises the following thirteen claims: (I) Minnesota Statute § 253D is facially unconstitutional; (II) Minnesota Statute § 253D is unconstitutional as applied; (III) Defendants have failed to provide treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (IV) Defendants have failed to provide treatment in violation of the MCTA; (V) Defendants have denied Plaintiffs the right to be free from punishment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VI) Defendants have denied Plaintiffs the right to less restrictive alternative confinement in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VII) Defendants have denied Plaintiffs the right to be free from inhumane treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VIII) Defendants have denied Plaintiffs the right to religion and religious freedom in violation of the First and Fourteenth Amendments to the United States Constitution; (IX) Defendants have unreasonably restricted free speech and free association in violation of the First Amendment to the United States Constitution and the Minnesota Constitution; (X) Defendants have conducted unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution; (XI) Defendants have violated court ordered treatment; (XII) Defendants Jesson, Benson, Moser, Lundquist, Johnston, and Hébert have breached Plaintiffs'

contractual rights; and (XIII) Defendants Jesson, Benson, Moser, Lundquist, Johnston, and Hébert have tortiously interfered with contractual rights and  have intentionally violated Minn. Stat. § 253B.03, subd. 7.  (Third Am. Compl. at 59-84.)

On February 2, 2015, the Court issued an order denying Defendants' Motion for Summary Judgment on all counts in Plaintiffs' Third Amended Complaint.  (Doc. No. 828.)  The matter proceeded to trial in two phases.  (*See* Doc. No. 647.)  The Court explained the two phases of trial as follows:

> Phase One will be comprised of the presentation of evidence and argument on the following issues:  (1) whether Minnesota Statute Chapter 253D is unconstitutional on its face and as applied; (2) whether the treatment provided is constitutionally and/or statutorily infirm; (3) whether the treatment program complies with court-ordered treatment; (4) whether confinement is tantamount to unconstitutional punitive detention; and (5) whether less restrictive alternatives to confinement are constitutionally required.
> . . .
> Phase Two shall be comprised of the presentation of evidence and argument on the following issues:  (1) whether confinement conditions constitute unconstitutional restrictions on freedom of speech, religion, and association; (2) whether confinement procedures constitute unconstitutional searches and seizures; (3) whether the treatment program and its implementation constitutes a breach of contract, tortious interference with contract, and intentional violation of Minnesota Statute Section 253B.03(7).

(*Id.* at 2.)  Phase One of trial took place between February 9, 2015 and March 18, 2015.  (*See* Doc. Nos. 839, 908.)

On June 17, 2015, the Court issued its Findings of Fact, Conclusions of Law, and Order, granting Plaintiffs' request for declaratory relief on Counts I and II.  (Doc. No. 966 at 75.)  The Court stated, "[b]ecause the Court finds the program is unconstitutional on its face and as applied (Counts I and II), and because any remedy

fashioned will address the issues raised in the remaining Phase One Counts, the Court

need not address Counts III, V, VI, and VII." (*Id.* at 65.) The Court noted that its

"determination that the MSOP and its governing civil commitment statutes are

unconstitutional concludes Phase One of this case." (*Id.* at 5.) The Court also reiterated

that "Counts VIII, IX, and X, will be tried in the second phase of trial ('Phase Two')."[1]

(*Id.* at 76.) On October 29, 2015, the Court issued a First Interim Relief Order directing

injunctive relief to remedy the court's findings of unconstitutionality. (Doc. No. 1035.)

Defendants appealed the Court's June 17, 2015 and October 29, 2015 Orders to

the Eighth Circuit Court of Appeals. (Doc. No. 1036.) On January 3, 2017, the Eighth

Circuit issued an opinion "revers[ing] the district court's finding of a constitutional

violation and vacat[ing] the injunctive order." *Karsjens v. Piper*, 845 F.3d 394, 411 (8th

Cir. 2017). It remanded the case to this Court "for further proceedings on the remaining

claims in the Third Amended Complaint." *Id.*

Following a series of stays during which Plaintiff sought further review at the

United States Supreme Court, the Court and the parties met for a Status Conference on

October 25, 2017. (*See* Doc. Nos. 1080, 1086, 1093.) Thereafter, Defendants filed a

renewed Motion for Summary Judgment, seeking summary judgment on Counts VIII, IX,

and X, as well as apportionment of the Rule 706 Expert costs to Plaintiffs. In briefing

this motion, Defendants also briefed the issue of how the Court should address the

remaining Phase One counts (Counts III, V, VI, and VII) in light of the Eighth Circuit's

---

[1]      On August 10, 2015, Counts IV, XI, XII, and XIII were dismissed with prejudice.
(Doc. No. 1005.)

decision. (Doc. No. 1095.) The parties fully briefed these issues, and the Court heard

argument on February 5, 2018. (Doc. Nos. 1097, 1100, 1102, 1103.) The Court notes

additional facts as necessary to resolve the pending matters, below.

## DISCUSSION

### I. Remaining Phase One Counts

Defendants argue that the remaining claims in Phase One should be dismissed

because these claims were determined by the Eighth Circuit's decision in *Karsjens*, 845

F.3d 394 (8th Cir. 2017). Specifically, Defendants assert that, "[f]or the same reasons the

Eighth Circuit reversed the Court's substantive due process analysis as to Counts I and II,

the substantive due process claims asserted in Counts III, V, VI, and VII should also be

dismissed." (Doc. No. 1097 at 4.) According to Defendants, the remaining Phase One

counts must be dismissed because the Eighth Circuit has already reviewed the trial record

and determined that Defendants did not engage in conduct that shocks the conscience.

Defendants also contend that the Eighth Circuit implicitly decided Counts III, V, VI, and

VII, precluding further review of these claims on remand.[2]

Plaintiffs, on the other hand, argue that the remaining Phase One counts "have yet

to be decided by the Court, and that their outcome is not dictated by the Eighth Circuit's

decision with respect to Counts I and II." (Doc. No. 110 at 1-2.) Plaintiffs urge the Court

---

[2]     Defendants also argue that the remaining counts in Phase One must be dismissed
for lack of subject matter jurisdiction to the extent they are based on allegations that
Defendants have violated Minnesota state law. Plaintiffs do not dispute that such claims
are subject to dismissal under *Pennhurst State School and Hospital v. Halderman*, 465
U.S. 89 (1984), and the Eleventh Amendment. Thus, the Court shall grant Defendants'
motion on this issue.

to make "a full analysis and ruling on these claims" and to conclude that Plaintiffs'

remaining substantive due process claims are supported by evidence of "both

conscience-shocking conduct by Defendants and the violation of a fundamental liberty

right such that they should prevail." (*Id.* at 2, 4.) According to Plaintiffs, "[i]f the Eighth

Circuit's opinion is read as broadly as Defendants suggest, then there is no path for

Plaintiffs, or any civilly committed sex offender, to ever prevail on a substantive due

process claim." (*Id.* at 4-5.) Plaintiffs argue that the trial record supports a determination

in their favor on the remaining substantive due process claims in Counts III, V, VI, and

VII because Defendants were deliberately indifferent to a substantial risk of harm to

Plaintiffs, and such conduct amounts to conscience-shocking behavior.[3]

### A.      The Eighth Circuit's Opinion

In the Eighth Circuit's *Karsjens* opinion, the appellate court reversed this Court's

liability findings on Counts I and II of Plaintiffs' Third Amended Complaint. 845 F.3d at

411. In doing so, the Eighth Circuit rejected this Court's application of a strict scrutiny

standard to Plaintiffs' facial and as-applied substantive due process claims. *Id.* at 407.

On Plaintiffs' facial due process claim in Count I, the Eighth Circuit stated that "the

Supreme Court . . . has never declared that persons who pose a significant danger to

themselves or others possess a fundamental liberty interest in freedom from physical

restraint." *Id.* Thus, it held that "the proper standard of scrutiny to be applied . . . is

---

[3]      Plaintiffs acknowledge that the Eighth Circuit's decision with respect to Count II addressed overlapping allegations as Counts III and VI, relating to treatment and the lack of less restrictive alternatives. However, Plaintiffs argue that "the Court should specifically address the allegations in Counts III and IV and apply the 'shocks-the-conscience' standard to those counts." (*Id.* at 7 n.5.)

whether MCTA bears a rational relationship to a legitimate government purpose." *Id.* at

407-08.  The Court held that the MCTA met this "highly deferential" standard, reversing

this Court's conclusion that the statute was facially unconstitutional for six specified

reasons.[4]  *See id.* at 409-10.

With regard to Count II, Plaintiffs' as-applied substantive due process challenge,

the Eighth Circuit held that "the court should determine both whether the state

defendants' actions were conscience-shocking and if those actions violated a fundamental

liberty interest." *Id.* at 408.  The Eighth Circuit clarified that actions that meet the

conscience-shocking standard must be "egregious or outrageous" and "must involve

conduct 'so severe . . . so disproportionate to the need presented, and . . . so inspired by

malice or sadism rather than a merely careless or unwise excess of zeal that it amounted

to a brutal and inhumane abuse of official power literally shocking to the conscience.'"

*Id.* (citations omitted).

---

[4]     As summarized by the Eighth Circuit, the six reasons this Court identified for
finding the MCA unconstitutional as applied included the following:

> (1) MCTA did not require periodic risk assessments of all committed
> persons, (2) MCTA did not provide for a judicial bypass mechanism,
> (3) MCTA rendered discharge from the MSOP more onerous than
> admission because discharge criteria was more stringent than admission
> criteria, (4) MCTA impermissibly shifted the burden to petition for a
> reduction in custody to the committed person, (5) MCTA did not provide
> less restrictive alternatives although the statute indicated such would be
> available, and (6) MCTA did not require state officials to petition for a
> reduction in custody on behalf of committed individuals who might qualify
> for a reduction.

*Karsjens v. Piper*, 845 F.3d 394, 408-09 (8th Cir. 2017).

In discussing whether Plaintiffs' allegations implicated a fundamental liberty interest, the Eighth Circuit stated, "we have previously held that although 'the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, [it has not recognized] a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" *Id.* at 410 (quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)). It also noted that "the Supreme Court [has] recognized [that] the Constitution does not prevent 'a State from civilly detaining those for whom no treatment is available.'" *Id.* at 410 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

The Eighth Circuit then turned to the shocks-the-conscience prong of the substantive due process analysis and stated that "[n]one of the six grounds upon which the district court determined the state defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy the conscience-shocking standard." *Id.* at 410. These six grounds included the following:

> (1) Defendants do not conduct periodic independent risk assessments or otherwise evaluate whether an individual continues to meet the initial commitment criteria or the discharge criteria if an individual does not file a petition; (2) those risk assessments that have been performed have not all been performed in a constitutional manner; (3) individuals have remained confined at the MSOP even though they have completed treatment or sufficiently reduced their risk; (4) discharge procedures are not working properly at the MSOP; (5) although section 253D expressly allows the referral of committed individuals to less restrictive alternatives, this is not occurring in practice because there are insufficient less restrictive alternatives available for transfer and no less restrictive alternatives available for initial commitment; and (6) although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention.

*Id.* at 402–03.  The court explained, "[h]aving reviewed these grounds and the record on appeal, we conclude that the class plaintiffs have failed to demonstrate that any of the identified actions of the state defendants or arguable shortcomings in the MSOP were egregious, malicious, or sadistic as is necessary to meet the conscience-shocking standard."  *Id.* at 410-11.  It then reversed the findings of a constitutional violation, vacated the injunctive order, and "remand[ed] this matter to the district court for further proceedings on the remaining claims in the Third Amended Complaint."  *Id.* at 411.

### B.      Scope of Review on Remand

As discussed above, the parties dispute whether the remaining Phase One counts were explicitly or implicitly decided by the Eighth Circuit.  Defendants contend that the Eighth Circuit explicitly, or at a minimum implicitly, decided these claims.  Plaintiffs dispute that the Eighth Circuit decided these claims, emphasizing that it never even mentioned them in its opinion.

Under the law of the case doctrine, "the district court is not free on remand to reconsider any question finally disposed of by the court of appeals."  *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 364 F.3d 925, 931 (8th Cir. 2004).  However, the court may consider "any issue 'not expressly or impliedly disposed of on appeal.'"  *Id.* (citation omitted).  If the appellate court directs the lower court to consider a specific claim upon remand, that "does not restrict its decision to *only* that matter."  *Id.*  Rather, any unresolved claims are "within the province of the district court to entertain."  *Id.* Even where the language in an appellate decision appears broad, "it is necessarily limited

by the context of the claims and issues decided in that appeal." *See Forest Park II v. Hadley*, 408 F.3d 1052, 1057 (8th Cir. 2005); *see also U.S. Fid. & Guar. Co. v. Concrete Holding Co.*, 168 F.3d 340, 342 (8th Cir. 1999) ("Subjects an appellate court does not discuss, because the parties did not raise them, do not become the law of the case by default." (quoting *Bone v. City of Lafayette, Ind.*, 919 F.2d 64, 66 (7th Cir. 1990))).

Counts III, V, VI, and VII all arise under the due process clause of the Fourteenth Amendment[5] and challenge Defendants' acts and omissions relating to the creation and implementation of various policies at the MSOP. (*See* Third Am. Compl. ¶¶ 254-61, 269-97.) Count III raises a failure-to-provide treatment claim. (*Id.* ¶¶ 254-61.) Count V alleges a denial of the right to be free from punishment. (*Id.* ¶¶ 269-83.) Count VI asserts a denial of the right to less restrictive alternative confinement. (*Id.* ¶¶ 284-91.) Finally, Count VII alleges a denial of the right to be free from inhumane treatment. (*Id.* ¶¶ 292-97.) In its June 17, 2015 Findings of Fact, Conclusions of Law, and Order, the Court declined to resolve these counts, stating that "[b]ecause the Court finds the program is unconstitutional on its face and as applied (Counts I and II), and because any remedy fashioned will address the issues raised in the remaining Phase One Counts, the Court need not address Counts III, V, VI, and VII." (Doc. No. 966 at 65.)

None of these claims were identified by Defendants in their list of issues being appealed to the Eighth Circuit. (*See* Doc. No. 1036-1 at 2.) Thus, the Eighth Circuit's

---

[5] To the extent these counts arise under the Minnesota Constitution, they are dismissed with prejudice. *See supra* note 2.

opinion did not specifically reference these claims.[6]  *See generally Karsjens*, 845 F.3d

394.  The Eighth Circuit only analyzed the Court's constitutionality determinations with

respect to Counts I and II, Plaintiffs' facial and as-applied due process challenges to the

MCTA.  *See id.* at 406-11.  Although the Eighth Circuit's analysis of these claims

addressed a number of issues that overlap with the Phase One counts that were left

undecided, Counts III, V, VI, and VII were neither expressly nor impliedly decided by

the Eighth Circuit on appeal.  Thus, on remand, these claims remain viable, and the Court

shall resolve these claims on their merits in light of the Eighth Circuit's decision.

### C.     Remaining Phase One Claims on the Merits

As noted, Plaintiffs' remaining Phase One claims allege Fourteenth Amendment

due process violations arising out of Defendants' acts and omissions in connection with

the operation of the MSOP.  These claims are thus governed by the substantive due

process standard outlined in the Eighth Circuit's *Karsjens* opinion.  Specifically, to hold

Defendants liable under Counts III, V, VI, and VII, the court must conclude that "the

state defendants' actions were conscience-shocking and [that] those actions violated a

fundamental liberty interest."  *Karsjens*, 845 F.3d at 408.

Plaintiffs' arguments with respect to these counts center on the punitive nature of

the MSOP combined with treatment and release procedures that result in indefinite

---

[6]      In discussing this Court's liability order, the Eighth Circuit explained, "[t]he court
noted it would address the remaining claims in the Third Amended Complaint in a second
phase of the trial and in a separate order."  *Karsjens*, 845 F.3d at 403.  This reference
appears to relate to Counts IV, XI, XII, and XIII which the Court stated "will be
addressed under separate Order," as well as Counts VII, IX, and X which the Court stated
"will be tried in the second phase of trial."  (Doc. No. 966 at 76.)

confinement.  The Eighth Circuit has recently affirmed that "a committed acquittee is entitled to release once he is no longer dangerous or no longer mentally ill."  *Andrews v. Schafer*, 888 F.3d 981, 984 (8th Cir. 2018).  While this proposition may support an individual's challenge to a court order that restrains his liberty, however, to successfully assert a substantive due process claim in this context, the plaintiff must establish both parts of the Eighth Circuit's two-part inquiry outlined in *Karsjens*.  *Id.* at 984.  The Eighth Circuit's established standard affirms that "[i]n the context of substantive due process, an individual must overcome a very heavy burden to show a violation of the Fourteenth Amendment."  *Hall v. Ramsey Cty.*, 801 F.3d 912, 917 (8th Cir. 2015).

### 1.      Failure to Provide Treatment Claim (Count III)

Turning to Plaintiff's failure-to-provide-treatment claim in Count III, the Eighth Circuit stated in *Karsjens*, "we have previously held that although 'the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, [it has not recognized] a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'"  *Karsjens*, 845 F.3d at 410 (quoting *Strutton*, 668 F.3d at 557).  In *Strutton v. Meade*, the Eighth Circuit had held that the plaintiff, an individual civilly committed under the Missouri Sexually Violent Predators Act, "does not have a fundamental due process right to sex offender treatment."  668 F.3d at 557.  This was so even though Missouri's statutory scheme authorized commitment "for control, care and treatment until such time as [the offender's] mental abnormality has so changed that [he] is safe to be at large."  *Id.* (quoting Mo. Rev. Stat. § 632.495(2)).  The Eighth Circuit

applied the shocks-the-conscience standard and held that "[a]lthough the treatment [plaintiff] received may have been less than ideal, and perhaps even inadequate by professional standards, it was not so lacking as to shock the conscience." *Id.* at 558.[7]

Notwithstanding the Eighth Circuit's comments in *Karsjens*, Plaintiffs contend that the Supreme Court has not determined whether committed individuals have a constitutional right to treatment under the circumstances of this case. Plaintiffs argue that their allegations in Count III center on the manner in which Defendants' treatment program blocks Plaintiffs' release from the MSOP "rather than alleging a constitutional right to treatment per se." (Doc. No. 1100 at 8.) In this context, Plaintiffs argue that "[t]he multitude of issues with the MSOP's treatment program, when considered as a system-wide problem, reach the level of conscience shocking behavior that violates due process." (*Id.* at 9.) Plaintiffs also assert that this claim implicates the "fundamental liberty right to be free from commitment, or bodily restraint, when the basis for the commitment no longer exists." (*Id.* at 14.) Plaintiffs dispute that the Eighth Circuit established that Plaintiffs have no such fundamental liberty right. With respect to Count III, Defendants argue that "[t]he Eighth Circuit explicitly rejected Plaintiffs' contention

---

[7]     This Court previously distinguished *Strutton* based on differences between Minnesota and Missouri's statutory mandate directing treatment and because "the plaintiff's claims [in *Strutton*] were limited to his access to treatment; he neither raised a systemic challenge to the implementation of the program as a whole, nor did he allege that his confinement was punitive in nature." (Doc. No. 828 at 21 n.27 (quoting Doc. No. 427 at 24).) The Eighth Circuit's reference to *Strutton* in its *Karsjens* opinion suggests that these bases for distinguishing *Strutton* do not materially impact the relevant substantive-due-process inquiry applicable to the Plaintiffs' claims in this case.

that they have a fundamental substantive due process right to treatment." (Doc. No. 1097 at 5.)

The Court concludes that Plaintiffs have failed to establish Defendants' liability under Count III. In this circuit, committed individuals do not have a recognized "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." *Karsjens*, 845 F.3d at 410 (quoting *Strutton*, 668 F.3d at 557). Furthermore, the Eighth Circuit appears to reject the notion that committed individuals such as Plaintiffs have a fundamental liberty interest in freedom from unjustified confinement. *See id.* at 407 ("[T]he Supreme Court . . . has never declared that persons who pose a significant danger to themselves or others possess a fundamental liberty interest in freedom from physical restraint."). Finally, the Eighth Circuit reviewed the Phase One trial record, including this Court's finding that "although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention." *See id.* at 403, 410-11. Nonetheless, the Eighth Circuit held that Defendants' conduct was not conscience-shocking to support substantive due process liability. *See id.* at 410-11 ("[T]he class plaintiffs have failed to demonstrate that any of the identified actions of the state defendants or arguable shortcomings in the MSOP were egregious, malicious, or sadistic as is necessary to meet the conscience-shocking standard."). Thus, under controlling Eighth Circuit precedent, Plaintiffs' Fourteenth Amendment failure-to-provide treatment claim lacks merit.

## 2.    Lack of Less Restrictive Alternatives Claim (Count VI)

Count VI asserts a related claim that Defendants have infringed upon Plaintiffs' constitutionally-protected right to less restrictive alternative confinement under the Fourteenth Amendment.  Plaintiffs argue that the lack of less restrictive alternatives available to committed individuals is conscience-shocking.  In particular, Plaintiffs contend that "[i]ntentionally failing to provide confinement that is appropriate for the varying levels of risk presented by Plaintiffs and the Class, and actually knowing that there are committed individuals who could be properly treated and managed in less restrictive settings, is conscience shocking."  (Doc. No. 1100 at 11.)  Plaintiffs suggest that Defendants' conduct amounts to deliberate indifference that supports finding a Fourteenth Amendment substantive due process violation.  Defendants, on the other hand, argue that "[t]he Eighth Circuit . . . explicitly rejected Plaintiffs' contention that due process requires the availability of less restrictive facilities."  (Doc. No. 1097 at 6.)

As with Plaintiffs' failure-to-provide-treatment claim, the Eighth Circuit's *Karsjens* decision forecloses finding Defendants' liable under Count VI.  The Eighth Circuit's statements regarding the lack of a fundamental right to treatment and the lack of a fundamental liberty interest in freedom from physical restraint strongly imply that civilly committed individuals do not retain a fundamental liberty interest in the least restrictive confinement appropriate for their risk level.  What is more, the Eighth Circuit specifically acknowledged this Court's findings that "individuals have remained confined at the MSOP even though they have completed treatment or sufficiently reduced their risk" and that "there are insufficient less restrictive alternatives available for transfer and

16

no less restrictive alternatives available for initial commitment." *Karsjens*, 845 F.3d at 402-03. It nevertheless held that "[n]one of the . . . grounds upon which the district court determined the state defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy the conscience-shocking standard." *Id.* at 410. The Court is therefore bound by the Eighth Circuit's decision to conclude that Defendants are not liable under the Fourteenth Amendment for failing to provide less restrictive alternatives to the Plaintiff Class.

### 3. Punitive Nature of Confinement Claims (Counts V, VII)

Counts V and VII challenge the punitive nature of confinement at the MSOP based on the asserted rights under the Fourteenth Amendment to be free from punishment and inhumane treatment. With respect to these claims, Plaintiffs argue "that commitment to the MSOP continues in duration beyond a time that it is constitutionally permissible." (Doc. No. 1100 at 12.) Plaintiffs emphasize that "Defendants do not even know whether hundreds of Plaintiffs and Class members continue to meet the constitutional criteria for commitment," and highlight the barriers the MSOP has imposed in the reduction-in-custody process. (*Id.*) On the merits of Counts V and VII, Defendants argue that Plaintiffs' theory challenging the punitive nature of the MSOP fails under the Fourteenth Amendment and the Eighth Circuit's application of the shocks-the-conscience standard.

The Court concludes that the Eighth Circuit's holdings and reasoning preclude finding a substantive due process violation under Counts V and VII. Notwithstanding this Court's finding holding that the MCTA "results in a punitive effect and application contrary to the purpose of civil commitment," the Eighth Circuit reversed the Court's

17

finding of liability under the Fourteenth Amendment. *Karsjens*, 845 F.3d at 402.

Ultimately, the Eighth Circuit reviewed the Phase One record and determined that "the

class plaintiffs have failed to demonstrate that any of the identified actions of the state

defendants or arguable shortcomings in the MSOP were egregious, malicious, or sadistic

as is necessary to meet the conscience-shocking standard." *Id.* at 410-11.  In light of

these conclusions and the applicable standard for imposing substantive due process

liability, the Court concludes that Defendants are not liable under Counts V and VII.

### 4. Plaintiffs' Unconstitutionally Punitive Theory

Alternatively, Plaintiffs contend that they should prevail on their remaining Phase

One claims because Defendants are unconstitutionally punishing civilly committed

individuals.  Plaintiffs assert that "[w]hether commitment to the MSOP is punitive, as

alleged in each of these claims, has not yet been determined by the Court," and that the

Eighth Circuit has not identified the proper standard by which to analyze such

allegations.  (Doc. No. 1100 at 5.)  According to Plaintiffs, the trial record supports a

finding that "Plaintiffs' commitment to the MSOP under the Act is punitive in effect"

based on the treatment, living conditions, and discharge process, "the consequence of

which is effectively life-long punitive detention."  (*Id.* at 16.)  Plaintiffs also point to the

lack of periodic risk assessments conducted at the MSOP and argue that "[h]olding

Plaintiffs and Class members beyond such a time as they meet commitment standards, as

well as not even knowing whether people should continue to be confined, is certainly not

rationally related to a nonpunitive purpose, the rendering the Act punitive in effect."  (*Id.*

at 21.)  In short, Plaintiffs argue that the record supports a finding that the MCTA is punitive and therefore unconstitutional under Counts III, V, VI, and VII.

In response, Defendants contend that Plaintiffs are merely repeating arguments that have been rejected by the Eighth Circuit.  In particular, Defendants note that "the Eighth Circuit considered and rejected Plaintiffs' theory that the MSOP 'results in a punitive effect and application contrary to the purpose of civil commitment' in violation of substantive due process."  (Doc. No. 1102 at 5 n.7 (quoting *Karsjens*, 845 F.3d at 402).)  In any event, Defendants contend that Plaintiffs' alternative punitiveness theory under *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), is meritless and should be rejected because it was not advanced during the Phase One trial.  Defendants ultimately assert that it is irrelevant whether the remaining Phase One claims are analyzed under a theory of deliberate indifference or general punitiveness; in any case, Defendants argue, the shocks-the-conscience standard controls.

Even under this alternative theory of liability, the Court once again concludes that the Eighth Circuit's holdings are dispositive of Plaintiffs' remaining Phase One claims. Regardless of the theory of liability alleged, Plaintiffs' Fourteenth Amendment substantive due process claims are analyzed under the two-part test identified by the Eighth Circuit in its *Karsjens* opinion.  Furthermore, the Eighth Circuit has explicitly held that Defendants' actions, as revealed in Phase One of trial, do not rise to the conscience-shocking level necessary to support Fourteenth Amendment substantive due process liability.  Even if this Court were free to conclude that the MSOP and Defendants' implementation of the MCTA amount to punishment of individuals who are

subject to civil commitment, the Eighth Circuit's decision compels the conclusion that Defendants have not engaged in conscience-shocking conduct to support the imposition of liability under the Fourteenth Amendment.[8]

For the reasons stated above, in light of the Eighth Circuit's decision, the Court finds that Defendants are not liable under Plaintiffs' remaining Phase One claims. Thus, Counts III, V, VI, and VII shall be dismissed with prejudice. The Court next turns to Phase Two and Defendants' renewed Motion for Summary Judgment on Counts VII, IX, and X.

## II.    Decertification of Plaintiffs' Phase Two Class Claims

Plaintiffs' Phase Two claims raise constitutional challenges to Defendants' implementation of various policies at the MSOP. (*See* Third Am. Compl. ¶¶ 298-325.) Specifically, Count VIII alleges a First Amendment religious freedom claim. (*Id.* ¶¶ 298-306.) Count IX alleges unreasonable restrictions on Plaintiffs' First Amendment freedom of speech and association rights. (*Id.* ¶¶ 307-15.) Count X asserts that Defendants have conducted unreasonable searches and seizures in violation of the Fourth Amendment. (*Id.* ¶¶ 316-25.) With respect to Counts VIII and IX, Plaintiffs allege that the challenged "policies, procedures and practices are not related to a legitimate institutional or therapeutic interest of the Defendants." (*Id.* ¶¶ 303, 312.) Concerning Count X, Plaintiffs contend that Defendants' "search policies, procedures and practices unnecessarily invade the personal rights of Plaintiffs and Class members." (*Id.* ¶ 322.)

---

[8]    Significantly, the Court's conclusion on the viability of this theory in this case is not meant to foreclose committed individuals from advancing this theory in separate litigation.

In briefing their renewed Motion for Summary Judgment with respect to Plaintiffs' Phase Two claims, Defendants asserted in footnotes that Plaintiffs' alleged injuries were subject to individualized inquiry and "not capable of classwide resolution." (Doc. No. 1102 at 13 n.13, 15 n.14.)  Despite neither party formally requesting decertification of the Class with respect to Phase Two, Plaintiffs stated at oral argument that these claims should be decertified.  The Court requested letter briefs from the parties on this issue, and each party filed a supplemental response.

Defendants contend that "[t]he Court should enter judgment on the merits in favor of Defendants on Plaintiffs' Phase Two claims." (Doc. No. 1105 at 1.)  Defendants emphasize that there are no new circumstances to support Plaintiffs' belated change in position and new litigation strategy.  "After six years of litigation," Defendants contend, "Plaintiffs should not be permitted to avoid a determination of the claims on the merits, and the Court should grant Defendants summary judgment." (*Id.* at 2.)  At a minimum, Defendants ask the Court to grant summary judgment with respect to the class representatives' individual claims.

Plaintiffs state that the Court should render a decision with respect to Plaintiffs' Phase Two claims based on the parties' arguments and the evidentiary record.  Plaintiffs also contend, however, that "[t]he Court has the discretion, and the obligation, to decertify a class where class treatment is no longer appropriate, even where the initial certification has not been challenged." (Doc. No. 1106 at 1.)  According to Plaintiffs, "[a]s this case has progressed through discovery, trial, and appeals, it has become apparent that class treatment is not appropriate for the Phase Two claims" because

Defendants' conduct in applying various MSOP policies "[does not] apply generally to the class." (*Id.* at 2 (quoting Fed. R. Civ. P. 23(b)(2)).) In Plaintiff's view, "the Court has a duty to decertify the Class for the Phase two claims and allow Plaintiffs and Class member[s] to pursue any claims they may have on an individual basis." (*Id.*)

Once a class is certified pursuant to Federal Rule of Civil Procedure 23, the court retains a continuing duty to assure the propriety of certification. *See Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986). In addition, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). A decision to decertify a class should arise based on changed circumstances that were not present when the class was certified. *See* William B. Rubenstein, *Newberg on Class Actions* § 7:34 (5th ed. 2018 Update). And whether to decertify a class is within the district court's discretion. *See Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1157 (8th Cir. 2017).

The Court certified the Plaintiff Class on July 24, 2012, pursuant to Federal Rule of Civil Procedure 23(b)(2), concluding "that Defendants' alleged acts and omissions regarding the Plaintiffs' claims constitute actions generally applicable to the Class." (Doc. No. 203 at 11.) Among others, the Court identified the following common questions of law or fact applicable to the Class:

> "Whether Defendants violated Plaintiffs' and Class members' rights to be free from unreasonable searches and seizures as protected by the Fourth Amendment to the United States Constitution; [and] . . .

> "Whether Defendants violated Plaintiffs' and Class members' rights to freedom of expression, speech, and religious exercise as protected by the First Amendment to the United States Constitution[.]"

(*Id.* at 6-7.)  The Court also concluded that "resolution of the Plaintiffs' claims will necessarily remedy the injuries suffered by all potential Class members."  (*Id.* at 7.)  Finally, the Court emphasized the shared interests between the named plaintiffs and the proposed class, noting that "they share the common goal of being housed in a humane, therapeutic environment while receiving adequate treatment that gives them a realistic opportunity for release."  (*Id.* at 10.)

As Plaintiffs noted in their brief in response to Defendants' renewed Motion for Summary Judgment, Counts VIII, IX, and X "all claim that the policies and practices at the MSOP are punitive."  (Doc. No. 1100 at 24.)  Plaintiffs acknowledge that "[c]laims regarding the application of specific policies to a particular Plaintiff or Class member are not appropriate for class treatment" if such claims arise from conduct that is not generally applicable to the class.  (*Id.* at 25.)  Plaintiffs' theory concerning these claims, however, is "that when viewed collectively, these policies are clear violations of Plaintiffs' and Class members' constitutional rights."  (*Id.*)  Plaintiffs argue, "it is these policies and practices in combination and when applied to the Class as a whole, that rise to the level of a constitutional violation, along with the fact that they are applied uniformly to all Plaintiffs without regard for individual treatment needs or risk levels."  (*Id.*)

The Court declines to decertify the Class in this matter because the common questions and shared interests identified in the Court's order granting class certification remain with respect to the MSOP's generally-applicable policies and practices.  To be sure, individuals residing at the MSOP may have viable individual claims regarding the

application of specific policies to them as individuals.  However, this fact does not

foreclose the Court from considering Plaintiffs' claims on a classwide basis to the extent

the policies affect the Class as a whole.  Thus, the Court shall consider Plaintiffs'

classwide claims on their merits to the extent they allege systemic challenges to the

punitive nature of confinement at the MSOP arising under the First and Fourth

Amendments.

## III.    Defendants' Motion for Summary Judgment on Phase Two Claims

Defendants argue that the Eighth Circuit's decision eliminates the rationale on

which the Court previously denied summary judgment on Plaintiffs' remaining Phase

Two claims.  Specifically, Defendants emphasize that "the Court based its denial of

Defendants' previous summary judgment on Counts VIII, IX, and X on the proposition

that they might have merit in combination with Plaintiffs' Phase One substantive due

process claims regarding the conditions of their confinement."  (Doc. No. 1097 at 23.)

Defendants dispute this rationale and further contend that, in any case, it is "disposed of

by the Eighth Circuit's opinion."[9]  (*Id.*)  Defendants point to recent caselaw decided since

the Court's prior summary judgment decision that supports granting summary judgment

to Defendants on Plaintiffs' Phase Two claims.  Finally, Defendants assert that "Plaintiffs

continue to cite no authority for the proposition that constitutional policies somehow

become unconstitutional in combination with one another."[10]  (Doc. No. 1102 at 10.)

---

[9]     Defendants further note that "even Plaintiffs previously agreed that the disposition
of Phase One would affect Phase Two."  (Doc. No. 1102 at 10.)

[10]     Defendants also argue that Counts IX and X must be dismissed to the extent they

Contrary to Defendants' view, Plaintiffs argue that "[t]he Eighth Circuit's opinion . . . has no bearing on the analysis of these claims." (Doc. No. 1100 at 25 n.12.) Plaintiffs explain that their First, Fourth, and Fourteenth Amendment claims in Counts VIII, IX, and X all arise from the contention "that the policies and practices at MSOP are punitive." (*Id.* at 24.) According to Plaintiffs, although "[e]ach of these claims involves a number of policies and practices that, when viewed individually, may not rise to the level of a constitutional violation," if the Court considers the policies "collectively," they amount to "clear violations of Plaintiffs' and class members' constitutional rights." (*Id.* at 24-25.) In short, Plaintiffs contend that the MSOP "operates as a punitive detention center rather than a treatment facility," supporting a finding of unconstitutionality.[11] (*Id.* at 26.)

A.    **Legal Standard**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

---

arise under the Minnesota Constitution. As noted above, Plaintiffs do not dispute that such claims are subject to dismissal, and the Court shall grant dismissal on this basis.

[11]    Plaintiffs contend that Defendants should be precluded from relitigating summary judgment on the Phase Two Counts. However, the Court and the parties agreed that Defendants would be permitted to bring a renewed motion for summary judgment.

Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**B.      Impact of Phase One on Plaintiffs' Phase Two Claims**

On February 2, 2015, the Court denied Defendants' initial Motion for Summary judgment with respect to Counts VIII, IX, and X. (Doc. No. 828 at 32-39.) The Court also denied summary judgment on the Phase One claims that proceeded to trial. (*Id.* at 16-32.) The Court stated that "[a]t the heart of Plaintiffs' Third Amended Complaint is the contention that Minnesota's civil commitment scheme for sex offenders constitutes a punitive system of preventive detention in violation of the due process requirements of the Fourteenth Amendment." (*Id.* at 24.) The Court concluded that "[t]he record before the Court indicates that Plaintiffs have presented sufficient evidence to allow a reasonable factfinder to conclude that the civil commitment system is unconstitutionally punitive in nature." (*Id.* at 31.)

In analyzing Plaintiffs' Phase Two claims, the Court indicated that Plaintiffs'

allegations as a whole influenced the Court's conclusions, particularly with respect to

Counts IX and X. Specifically, concerning Count IX, the Court stated, "considering

Plaintiffs' claims with respect to restrictions on their ability to freely associate and speak

and in light of all of Plaintiffs' allegations regarding their conditions of confinement, the

Court finds that Plaintiffs have presented sufficient evidence to support a claim that

survives summary judgment." (*Id.* at 36.) Similarly, with respect to Count X, the Court

held that "[c]onsidering Plaintiffs' Fourth Amendment claim in conjunction with other

evidence presented by Plaintiffs surrounding the punitive nature of their confinement, the

Court determines that a genuine issue of material fact exists as to whether the search

policies in this case are reasonable and appropriate." (*Id.* at 39.)

Although the Eighth Circuit's opinion did not address Plaintiffs' Phase Two

claims, its conclusions regarding Counts I and II minimized the constitutional

significance of Plaintiffs' overall allegations regarding the punitive nature of confinement

at the MSOP. The Eighth Circuit noted the Court's holding "that Minnesota's civil

commitment scheme for sex offenders is a punitive system without the safeguards found

in the criminal justice system." *Karsjens*, 845 F.3d at 402. It also considered the Court's

determination that MCTA "results in a punitive effect and application contrary to the

purpose of civil commitment." *Id.* Without implying that these findings were in error,

the Eighth Circuit nonetheless "reverse[d] the district court's finding of a constitutional

violation" in Phase One. *Id.* The Court concludes that its analysis of Plaintiffs' Phase

Two claims at this stage must be considered in light of the Eighth Circuit's decision.

Furthermore, as Defendants have pointed out, the Phase One trial testimony of all four Rule 706 Experts provides additional record evidence relevant to Plaintiffs' Phase Two claims. Rule 706 Expert Deborah McCulloch agreed that neither the MSOP's mail policy nor search policies were "outside the bounds of what you would expect at a highly secure sex offender treatment center." (Doc. No. 936 ("Tr. Vol. I") at 147-48.) She testified that the MSOP's policies were developed with attention to the need to balance security and treatment at the facility. (*See* Doc. No. 937 ("Tr. Vol. II") at 304-05.) Based on her review of the MSOP's policies concerning searches, client transportation, spiritual practices, media, mail, client movement, yard use, visitation, and client property, McCulloch did not identify any particular problems. (*Id.* at 306-11, 321, 323-25.)

Dr. Naomi Freeman, another Rule 706 Expert, testified that she deferred to McCulloch's expertise concerning facility policies, but that she had no concerns with the MSOP policies she had reviewed as written. (Doc. No. 939 ("Tr. Vol. IV") at 876.) She also explained that her own state's civil commitment program subjects clients to room searches, monitoring of mail, and restraints during transportation. (*Id.* at 877.) Freeman agreed that "the policies [she] reviewed are within acceptable standards." (*Id.* at 878.) Dr. Robin Wilson and Dr. Michael Miner largely deferred to McCulloch and Freeman's expertise and opinions regarding the MSOP's policies. (Doc. No. 938 ("Tr. Vol. III") at 626-28; Doc. No. 941 ("Tr. Vol. VI") at 1128.) Both of these experts generally agreed that the MSOP administrators created the policies through the exercise of professional judgment. (*See* Tr. Vol. III at 628; Tr. Vol. VI at 1173.)

The Court shall consider Defendants' renewed Motion for Summary Judgment on Plaintiffs' Phase Two claims in light of the Eighth Circuit's *Karsjens* opinion, the Court's conclusions above regarding Plaintiffs' remaining Phase One claims, and the Rule 706 Expert testimony elicited during Phase One of trial.

### C.     First and Fourteenth Amendment Religious Freedom (Count VIII)

In order to succeed on a claim under the Free Exercise Clause of the First Amendment, Plaintiffs must establish that Defendants' challenged policies and practices place a "substantial burden" on Plaintiffs' ability to practice their religion.  *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); *see also Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) ("[A] person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief.").  To find a substantial burden, the court must determine that the challenged practices:  (1) "significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs"; (2) "meaningfully curtail a person's ability to express adherence to his or her faith"; or (3) "deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion."  *Patel*, 515 F.3d at 813 (citation omitted).  A policy which requires an individual to choose between "adhering to their religious beliefs or facing serious disciplinary action" constitutes a substantial burden.  *Mueller v. Mesojedec*, Civ. No. 16- 277, 2017 WL 764866, at *5 (D. Minn. Jan. 6, 2017), *report and recommendation adopted,* Civ. No. 16- 277, 2017 WL 758929 (D. Minn. Feb. 27, 2017).  However, the alleged burden must be "more than an inconvenience."  *See id.*

Where an institutional policy infringes a civilly committed individual's constitutional rights, courts in this District have applied a modified version of the Supreme Court's four-part test outlined in *Turner v. Safley*, 482 U.S. 48 (1987), to determine whether the restriction is valid. *See Ivey v. Mooney*, Civ. No. 05-2666, 2008 WL 4527792, at *4 (D. Minn. Sept. 30, 2008); *Stone v. Jesson*, Civ. No. 11 -0951, 2017 WL 1050393, at *3 (D. Minn. Mar. 17, 2017). According to *Turner,* "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Ivey*, 2208 WL 4527792, at *4 (quoting *Turner*, 482 U.S. at 89). Because *Turner* arose in the context of prisoner litigation, the modified version of this test applicable to civilly committed individuals considers "whether [the policy or regulation] is reasonably related to legitimate institutional and therapeutic interests." *See id.* at *5, *10. The *Turner* standard requires courts to consider the following four factors:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Id.* (quoting *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004)). The burden rests with the plaintiff "to prove that a restriction is not reasonably related to the legitimate interest it purports to further." *Stone*, 2017 WL 1050393, at *3.

Defendants contend that they are entitled to summary judgment on Plaintiffs' First Amendment free exercise claim because "the record contains no evidence of a substantial burden on any client's religious practice" or that the MSOP's policies have "caused a

widespread substantial burden on clients' religious practice, as required to demonstrate class liability." (Doc. No. 1097 at 26.) Further, Defendants argue that the evidence establishes "that MSOP's policies are crafted in order to balance the rights of clients with therapeutic and security interests," and assert that Plaintiffs have failed to establish that the MSOP's policies are not related to a legitimate therapeutic or institutional interest. (*Id.* at 27.) Defendants also assert that they are entitled to summary judgment on this claim to the extent it is based on the Fourteenth Amendment because Plaintiffs may not simultaneously assert a Fourteenth Amendment claim based on conduct that is alleged to violate the First Amendment, and even if they could, the record lacks evidence that Plaintiffs' fundamental rights have been violated by conduct that shocks that conscience.

Plaintiffs contend that the record establishes that the MSOP's policies and practices relating to religion impose a substantial burden on Plaintiffs' practice of religion. Plaintiffs point to a number of examples, including restrictions on room usage for religious meetings, clothing and jewelry restrictions, restrictions on religious articles, and restrictive policies governing meetings with clergy. Plaintiffs assert that they may face disciplinary measures that could impact treatment progress if they fail to follow the MSOP's restrictive policies regarding religious practices. According to Plaintiffs, "[t]hese policies and practices substantially burden Plaintiffs' ability to engage in their sincerely held religious beliefs and are not related to legitimate facility safety concerns or therapeutic interests." (Doc. No. 1100 at 30.) Plaintiffs also argue that they may assert a Fourteenth Amendment claim in the alternative based on the conscience-shocking use of disciplinary measures against individuals who seek to exercise their religious beliefs.

The Court concludes that Defendants are entitled to summary judgment on Count VIII. Even if Plaintiffs could establish that Defendants' policies respecting religion impose a substantial burden on Class members' religious practices, Plaintiffs have failed to identify record evidence by which a jury could conclude that the MSOP's policies applied to the Class as a whole are not reasonably related to legitimate therapeutic and institutional interests. The Court shall thus grant Defendants' Motion for Summary Judgment on Count VIII.[12]

### D.  First Amendment Freedom of Speech and Association (Count IX)

The First Amendment's freedom-of-speech protections include "the right to utter or to print, . . . the right to distribute, the right to receive, the right to read," and the freedom to exercise inquiry and thought. *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965). The related First Amendment right of association includes "more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means." *See id.* at 483.

---

[12]  To the extent Plaintiffs' free-exercise claim in Count VIII arises under the Fourteenth Amendment, the Court concludes it is subject to dismissal. The Supreme Court has held that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (citation omitted). This holding disposes of Plaintiffs' religion-based claim to the extent it alleges a burden on religion covered by the First Amendment. Even if the Court were to conclude that any part of this claim separately states a substantive due process violation under the Fourteenth Amendment, the Court further finds that Plaintiffs have failed to raise a genuine issue of material fact as to whether any of Defendants' conduct with respect to religious practices is truly conscience-shocking to support liability.

Importantly, the Court's conclusions on the viability of Plaintiffs' classwide religion-based claims in this case are not meant to foreclose committed individuals at the MSOP from advancing individual religion-based claims in separate litigation.

Although civilly committed individuals retain these First Amendment protections, "[a]ny form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1038-39 (8th Cir. 2012) (emphasis and citation omitted).

The same modified *Turner* analysis outlined above applies to claims that certain institutional policies inhibit committed individuals' First Amendment freedom-of-speech and association rights. *See Banks v. Jesson*, Civ. No. 11- 1706, 2016 WL 3566207, at *3 (D. Minn. June 27, 2016); *Williams v. Johnston*, Civ. No. 14-369, 2015 WL 1333991, at *7 (D. Minn. Jan. 28, 2015), *report and recommendation adopted,* Civ. No. 14-369, 2015 WL 1334015 (D. Minn. Mar. 25, 2015). The MSOP's media policy restricting access to certain objectionable content has been deemed constitutional within this District. *See Banks*, 2016 WL 3566207, at *8 ("MSOP is constitutionally allowed to implement and enforce a policy which prohibits detainees from possessing items depicting nudity and visible genitals."). Similarly, an MSOP mail policy permitting the inspection of mail and an MSOP telephone policy imposing charges for calls and permitting monitoring have survived First Amendment scrutiny under *Turner*. *Semler v. Ludeman*, Civ. No. 09-0732, 2010 WL 145275, at *11, *15-16 (D. Minn. Jan. 8, 2010).

Defendants argue that the MSOP's policies challenged in Count IX should be upheld consistent with governing Eighth Circuit precedent and multiple cases out of this District. Specifically, Defendants point to caselaw which has upheld the MSOP's mail policy, phone policy, media policy, and vendor policy against First Amendment challenge. Contrary to Plaintiffs' position, Defendants argue, "there is no legal authority

for [the Plaintiffs'] belief that the conglomeration of a number of constitutional policies can result in something unconstitutional." (Doc. No. 1102 at 13.)

Plaintiffs contend that the MSOP's policies infringe their speech and association rights under the First Amendment. According to Plaintiffs, "[w]hen all of the MSOP's policies and practices affecting Plaintiffs' freedom of speech and association are considered together, it is clear that the MSOP does not limit its restrictions to those that are necessary for therapeutic or security reasons." (Doc. No. 1100 at 31.) In particular, Plaintiffs point to the MSOP's mail policy, visitation policy, media policy, and phone policy. Plaintiffs dispute Defendants' safety and security justification for such policies, arguing that Defendants offer only conclusory assertions.

As with Count VIII, above, the Court concludes that summary judgment is warranted on Plaintiffs' First Amendment claims in Count IX. In particular, the Phase One trial testimony of the Rule 706 Experts as well as caselaw evaluating the MSOP policies informs this Court's conclusions with respect to the policies challenged under this claim. Plaintiffs have failed to raise a genuine dispute over whether Defendants' policies implicating speech and association are an unreasonable restriction on Plaintiffs' First Amendment rights as applied to the Class as a whole. The Court therefore grants summary judgment to Defendants' on Count IX.[13]

_____

[13] Notably, the Court's conclusions on the viability of Plaintiffs' freedom-of-speech and association claims in this case are not meant to foreclose committed individuals at the MSOP from advancing individual freedom-of-speech and association claims in separate litigation.

**E.     Fourth Amendment Search and Seizure (Count X)**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "[I]nvoluntarily civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees."  *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013) (quoting *Beaulieu*, 690 F.3d at 1028).  To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails."  *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979).  In applying this balancing test, courts are to consider:  (1) the scope of the intrusion; (2) the manner in which the search is conducted; (3) the justification for the search; and (4) the location where the search is conducted.  *See id.* at 559; *Serna v. Goodno*, 567 F.3d 944, 949 (8th Cir. 2009) (applying the *Bell* balancing test to evaluate the reasonableness of a search at the MSOP).  The degree of suspicion is a relevant component within this balancing test, but it should not override the other identified factors.  *See Serna*, 567 F.3d at 950-51.  A court is obligated to defer to the judgment of institutional officials "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of institutional security."  *Arnzen*, 713 F.3d at 373 (quoting *Beaulieu*, 690 F.3d at 1029).  Furthermore, in evaluating search policies at the MSOP, the Eighth Circuit has rejected the need to "strictly apply a 'less intrusive means' test."  *Beaulieu*, 690 F.3d at 1029; *see also Serna*, 567 F.3d at 955.

A number of courts have previously addressed the constitutionality of various MSOP policies under the Fourth Amendment. "[R]andom room searches at MSOP" have repeatedly survived Fourth Amendment scrutiny. *See Housman v. Jesson*, Civ. No. 15- 2209, 2016 WL 7231600, at *3 (D. Minn. Dec. 14, 2016); *see also Daniels v. Jesson*, Civ. No. 13-736, 2014 WL 3629874, at *6 (D. Minn. July 22, 2014). A court in this District has also held post-work pat searches at the MSOP to be constitutional. *See Semler*, 2010 WL 145275, at *19. In *Beaulieu*, the Eighth Circuit upheld the MSOP's unclothed visual body search policy under the facts of that case. *See Beaulieu*, 690 F.3d at 1030. Evaluating the constitutionality of such searches, however, is a fact-dependent inquiry. *See Allan v. Ludeman*, Civ. No. 10-176, 2011 WL 978768, at *4 (D. Minn. Jan. 18, 2011*), report and recommendation adopted*, Civ. No. 10-176, 2011 WL 978658 (D. Minn. Mar. 17, 2011) ("[S]trip searches conducted at MSOP facilities may or may not be reasonable, and thus may or may not be constitutional, depending on the circumstances."). The same is true of the use of shackles and restraints. *See id.* at *6.

With respect to Plaintiffs' Fourth Amendment claims, Defendants emphasize that the Eighth Circuit has previously evaluated the MSOP search policies and acknowledged the need to maintain safety and security at the MSOP. Defendants also point to expert testimony which supports the validity and reasonableness of the MSOP's search policies. According to Defendants, the MSOP's room search policy, pat-search policy, unclothed visual body search policy, and restraint policy have all survived constitutional challenges in prior cases. Defendants argue that "Plaintiffs failed to provide anything more than

mere allegations regarding their search and seizure claim, which is insufficient to survive summary judgment." (Doc. No. 1102 at 15.)

Plaintiffs contend that "[i]t is clear that the MSOP's strip-search policy is not therapeutic." (Doc. No. 1100 at 33.) According to Plaintiffs, these unclothed visual body searches are not conducted based on any consideration of individual risk. Plaintiffs also allege that the MSOP's pat-search and restraint policies similarly fail to account for individualized suspicion or risk level. In addition, Plaintiffs challenge the MSOP's room-search policies. Plaintiffs argue that the caselaw identified by Defendants failed to consider "whether the policies were appropriately applied to all MSOP patients or whether application on an individual basis would be less restrictive." (*Id.* at 35.) "Considering all of the MSOP's search policies together," Plaintiffs contend, "it is apparent that Defendants do not take less intrusive measures into consideration, nor are all of these policies necessary for the safety of the facility." (*Id.*)

The Court determines that Defendants are entitled to summary judgment on Plaintiffs' classwide challenge to the MSOP's policies implicating the Fourth Amendment. The record lacks "substantial evidence showing [that the MSOP's] policies are an unnecessary or unjustified response to problems of institutional security," and the Court is thus bound to defer to Defendants' institutional judgment regarding the need for particular search policies. *See Arnzen*, 713 F.3d at 373 (quoting *Beaulieu*, 690 F.3d at 1029). Furthermore, caselaw has consistently affirmed the constitutionality of various search policies at the MSOP, and the Rule 706 Expert testimony suggests that the policies are reasonable for a sex offender civil commitment facility. The Court concludes that the

record fails to support Plaintiffs' classwide challenge alleging that the punitive nature of the MSOP renders its search and seizure policies unconstitutional under the Fourth Amendment. Therefore, the Court grants summary judgment to Defendants on Count X.[14]

## IV. Defendants' Motion For Final Apportionment of Rule 706 Expert Costs

Finally, Defendants ask the Court to make a final determination on the apportionment of costs for the Rule 706 Experts in this matter. The Court appointed the Rule 706 Experts to aid the Court in its resolution of this complex litigation. (*See* Doc. No. 354 at 4 ("To the extent Plaintiffs seek the appointment of expert witnesses for the benefit of the Court Pursuant to Rule 706, the motion is GRANTED.").) In its Order appointing the Rule 706 Experts, the Court stated that "Pursuant to Rule 706(c), the compensation shall be charged as costs in this litigation." (Doc. No. 393 at 5.) The Court thereafter ordered that "[w]ithout prejudice to subsequent adjustment, [the Rule 706 Expert] costs shall be initially allocated to Defendants." (Doc. No. 427 at 75.)

Experts appointed by the court pursuant to Federal Rule of Evidence 706 are "entitled to a reasonable compensation as set by the court." Fed. R. Evid. 706(c). Such compensation shall be paid "by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs." Fed. R. Evid. 706(c)(2); *see also U.S. Marshals Serv. v. Means*, 724 F.2d 642, 648 (8th Cir. 1983), *on reh'g,* 741 F.2d 1053 (8th Cir. 1984). Pursuant to Federal Rule of Civil Procedure 54(d), "costs

---

[14] Significantly, the Court's conclusions on the viability of Plaintiffs' search and seizure claims in this case are not meant to foreclose committed individuals at the MSOP from advancing individual search and seizure claims in separate litigation.

. . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Such costs may be taxed by the clerk and are then subject to the court's review upon motion. *See* Fed. R. Civ. P. 54(d)(1). "Under Rule 54(d), allocation of costs is within the sound discretion of the trial court." *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983).

Defendants argue that the Court should order Plaintiffs to pay for the Rule 706 Expert costs. According to Defendants, "[h]aving both asked for the appointment of the Rule 706 Experts and lost on appeal, Plaintiffs cannot plausibly argue that Defendants should have to pay the Rule 706 Experts." (Doc. No. 1097 at 12.) In addition, Defendants emphasize that the Plaintiffs' indigent status does not preclude the Court from apportioning the cost of expert compensation to them. To support their request, Defendants point to Federal Rule of Civil Procedure 54(d)(1) under which a prevailing party may recover its costs in litigation. In short, Defendants argue, "Plaintiffs[] lost and should have to pay for the experts they wanted." (Doc. No. 1102 at 8.)

Plaintiffs dispute Defendants' characterization that the Court appointed the Rule 706 Experts for their benefit, noting that the Rule 706 Experts' work was developed based on input from both parties. Plaintiffs also emphasize "that Defendants have relied on, and continue to rely on, the Rule 706 Experts' findings and testimony." (Doc. No. 1100 at 23.) Finally, Plaintiffs point out that they are indigent and argue that the Court may appropriately apportion the Rule 706 Expert costs to Defendants on this basis.

The Court concludes that an order apportioning the costs of the Rule 706 Experts to Plaintiffs would be premature at this stage. The Court reserves the right to revisit the

issue of apportioning these costs pursuant to Rule 54 following the entry of final judgment and upon complete briefing by the parties.

## CONCLUSION

The Court's determinations, above, resolve Plaintiffs' remaining Phase One and Phase Two claims. After many years of vigorous advocacy on all sides, the *Karsjens* litigation has effectively reached its end. With respect to Plaintiffs' remaining Phase One claims, the Court's conclusions are largely dictated by the Eighth Circuit's decision reversing this Court's finding of a constitutional violation under the Fourteenth Amendment. In light of the applicable substantive due process standard outlined in the Eighth Circuit's opinion and its broad holding that "the class plaintiffs have failed to demonstrate that any of the identified actions of the state defendants or arguable shortcomings in the MSOP were egregious, malicious, or sadistic as is necessary to meet the conscience-shocking standard," *Karsjens*, 845 F.3d at 410-11, the Court determines that Defendants are not liable for the remaining counts in Phase One. Concerning Defendants' Phase Two claims challenging the conditions of confinement at the MSOP under the First and Fourth Amendments on a classwide basis, the Court concludes that there is no genuine issue of material fact in dispute and Defendants are entitled to judgment as a matter of law.

With respect to Phase Two, the Court emphasizes that its conclusions solely address Plaintiffs' classwide claims of systemic constitutional violations. To the extent individual class members residing at the MSOP seek to raise individual claims based on alleged violations of their constitutional rights, it is this Court's view that such claims are

not foreclosed by the Court's determinations relating to Counts VIII, IX, and X of Plaintiffs' Third Amended Complaint. This suggestion applies, for example, to individual claims that the MSOP's application of particular policies has infringed a committed individual's right to freely exercise his religion, to exercise protected speech rights, to freely associate with individuals both within and outside of the MSOP, and to be free from an unreasonable search.

A number of lawsuits filed by civilly committed individuals at the MSOP are currently stayed pending the resolution of this case. (*See* Doc. Nos. 1080, 1083.) As noted above, it is this Court's view that its conclusions regarding Plaintiffs' classwide claims will leave any individual claims in these and future lawsuits unresolved. The prospect of these many individual lawsuits going forward may be a compelling reason for all parties to sit down in an attempt to reach an agreement to settle any remaining issues in this case, with or without the assistance of the Court, instead of incurring the significant costs and delay associated with pursuing an appeal. To do so might well serve the best interests of the parties, the public interest, and the interests of justice.

Finally, the Court expresses its view that some of the facts revealed during the lengthy Phase One trial in this matter are indeed shocking to this Court's conscience. In particular, the Court finds the circumstances surrounding the confinement of Rhonda Bailey, the MSOP's sole civilly committed female, to be truly conscience-shocking. Furthermore, the Court views the continued confinement of elderly individuals with a low likelihood of re-offense as an egregious affront to liberty, particularly in light of the pervasive sense of hopelessness at the MSOP. Similarly, the confinement of individuals

41

with cognitive disabilities or juvenile-only offenders who could safely reside in a less restrictive alternative facility or in the community remains of great concern to the Court.

Notwithstanding these observations and concerns, however, the Eighth Circuit's reversal of this Court's liability findings in large part compels the conclusions the Court reaches today. The Court hopes that the public and all stakeholders will carefully consider the complex issues raised by this litigation, moving forward in a manner that balances the interests of public safety, fundamental justice, and basic human dignity. Justice requires no less.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' remaining Phase One claims (Counts III, V, VI and VII) are **DISMISSED WITH PREJUDICE**.

2. Defendants' Motion for Summary Judgment on Phase Two (Counts VIII, IX, and X) (Doc. No. [1095]) is **GRANTED** and these counts are **DISMISSED WITH PREJUDICE**.

3. Defendants' Motion for Final Apportionment of Rule 706 Expert Costs (Doc. No. [1095]) is **DENIED WITHOUT PREJUDICE** to renewal in connection with a Motion for Costs pursuant to Federal Rule of Civil Procedure 54.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 23, 2018                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge