UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kevin Scott Karsjens, et al.,                          Civil File No. 11-cv-3659 (DWF/TNL)

          Plaintiffs,

     vs.                                    **RESPONSE TO PLAINTIFFS'**
                                **OBJECTIONS TO BILL OF COSTS**

Emily Johnson Piper, et al.,

          Defendants.

 

That Defendants want to recover their costs – especially those that relate to the 706 Experts – should be one of the least surprising requests in this case. Defendants asked the Court on multiple occasions that the 706 expert costs be allocated to Plaintiffs. And, given the circumstances under which the 706 Experts were appointed, it is unfair to make Defendants responsible for those costs. Nor do Plaintiffs' remaining objections have merit.

### FACTS

In August 2013, Plaintiffs asked the Court "to order the State to provide for the payment of the reasonable expenses, which will be incurred by Plaintiffs in this litigation relating to expert witnesses, depositions, transcripts, and copying." Doc. 319 at 2. Plaintiffs claimed that Federal Rule of Evidence 706[1] "provide[d] a sound basis for the

---

[1] Recognizing that the federal *in forma pauperis* statute did not help them, Plaintiffs also sought relief under Minnesota's IFP law. Doc. 319 at 12–19. The Court correctly held that Minnesota state law did not apply under the circumstances. Doc. 354 at 3-4.

Court to appoint experts in this matter" at Defendants' expense. *Id*. at 6. Plaintiffs told the Court that if it "d[id] not agree that it can provide for reasonable compensation of expert expenses without appointing the experts itself, then, in the alternative, Plaintiffs would seek that the Court appointment [sic] such experts, in consultation with Plaintiffs' counsel." *Id.* at 12. Defendants objected. Doc. 328.

Appointing expert witnesses "for the benefit of the Court," Doc. 354 at 4, the Court granted Plaintiffs' motion. *Id.* The Court required Defendants to deposit $1.8 million to pay for these experts. Doc. 434 at 2. Subsequent proceedings confirmed that the appointment of experts under 706 were – as Plaintiffs requested – "to allow the Court to provide for compensation of experts to assist Plaintiffs." Doc. 319 at 6.

Specifically, in July 2014, Defendants learned for the first time that the Court gave instructions to the 706 experts to find evidence to support Plaintiffs' claims. *See* Fed. R. Evid. 706(b) (requiring the court inform the expert of the expert's duties "in writing and have a copy filed with the clerk or may do so orally at a conference in which the parties have an opportunity to participate"). As one of the experts testified, the process directed by the Court would never result in a report about an individual or individuals who were in the correct placement, correct phase of treatment, and receiving the proper treatment for their treatment phase:

> Q. And so, you're not actually going to be writing any individualized reports about committed individuals at MSOP who are both in the right placement, in the right phase of treatment and receiving the proper treatment for their treatment phase; is that right?
>
> A. Yes. Sorry, I may have misheard you the first time.

Doc. 569 at 80:17-22.  Dr. Wilson explained that the Court "wondered whether or not there were any specific individuals that [the 706 experts] might – that we might ascertain would merit some further investigation or might actually be someone that could be either recommended for release or for some sort of a change in circumstances."  Doc. 569 at 75:21-76:1.  Dr. Wilson testified that the Court wanted the 706 experts to identify an individual to "serve as an example" of a "person [that] could have their circumstances changed."  Doc. 569 at 76: 2-16.

Although Plaintiffs now seem to suggest that the 706 experts were actually more helpful to Defendants, Doc. 1116 at 7-8, Plaintiffs ultimately called all of the 706 experts at the beginning of their case.[2]  Docs. 839, 847, 848, 851, 852, 860 (minute entries identifying witnesses that testified at trial).  Indeed, the first six days of Plaintiffs' case-in-chief consisted largely of the 706 experts.  *Id.*

Defendants have sought multiple times to have the costs associated with these experts allocated to Plaintiffs.  Docs. 1092 & 1097.  The Court denied final apportionment of the 706 experts' costs subject to renewal under Federal Rule of Civil Procedure 54.  Doc. 1108 at 42.  Following the Court's invitation, Defendants then sought their costs under Rule 54. Doc. 1114.

---

[2] For scheduling reasons, Plaintiffs called then-Commissioner Jesson out of order on the fifth day of trial.  *See* Tr. 234–35; Doc. 852.

3

# ARGUMENT

## I.  NAMED PLAINTIFFS SHOULD PAY DEFENDANTS' COSTS

Fed. R. Civ. P. 54(d)(1) creates a presumption that costs of a proceeding are taxed in favor of the prevailing party.  "When an expense is taxable as a cost . . . there is a strong presumption that a prevailing party shall recover it 'in full measure.'"  *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462, 468 (3d Cir. 2000) and citing *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir.1997)).  "The 'losing party bears the burden of making the showing that an award is inequitable under the circumstances.'"  *Id.* (quoting *In re Paoli,* 221 F.3d at 462-63).  And, "[t]o rebut the presumption that the prevailing party is entitled to recover all of its costs, the district court must provide a rationale for denying the prevailing party's claim for costs."  *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006).  "A general statement of fairness is insufficient, without more, to rebut the Rule 54(d)(1) presumption for an award of costs to the prevailing party."  *Id.*

Indigence is not enough to avoid taxing costs against a party.  28 U.S.C. § 1915(f)(1) (IFP statute states that "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings"); *Jackson v. Unknown Smith*, 116 F.3d 480, 1997 WL 325433, *1 (8th Cir. 1997) (unpublished) (*per curium*) ("A prevailing party may recover costs as a matter of course, if not precluded by federal law, whether the unsuccessful party is fee-paying or indigent."); *Porter v. McDonough*, No. 09-2536 (RHK/SER), 2011 WL 821181, *1 (D. Minn. Mar. 2, 2011) (ordering

indigent prisoner to pay costs and stating that "[w]hile inability to pay may support denying costs, it does not mandate it."); *Strutton v. Meade*, No. 4:05CV02022 ERW, 2010 WL 4609365, *2 (E.D. Mo, Nov. 4, 2010) (awarding costs against indigent defendant and stating that "taxing costs in favor of the prevailing party is generally done as a matter of course" and "every lawsuit involves an assumption of some amount of monetary risk on the part of the plaintiff, and the possibility of the taxation of costs if one's claims are not successful is merely another such risk."). The Eighth Circuit has upheld multiple awards of Rule 54 costs against non-prevailing parties experiencing economic hardship. *Lampkins v. Thompson*, 337 F.3d 1009, 1017 (8th Cir.2003) (affirming award of costs to federal law enforcement agents and against indigent prisoner); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir.1983) (affirming award of costs to major corporation and against individual plaintiff of "limited financial resources")). Other circuits have also held that an indigent litigant may have costs taxed against him at the conclusion of the case if he is unsuccessful on the merits of his action. *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.1989) (noting that "several courts of appeals have approved the taxation of costs against indigent civil rights plaintiffs"); *Lay v. Anderson*, 837 F.2d 231 (5th Cir.1988) (per curiam); *Harris v. Forsyth,* 742 F.2d 1277 (11th Cir.1984); *Flint v. Haynes*, 651 F.2d 970 (4th Cir.1981).

Here, Plaintiffs' excuses for why they should not have to pay Defendants' costs have no merit. First, unlike the non-prevailing parties in the cases they cite, Plaintiffs have not established the consequences an award of costs would have on them. In those cases:

- Unsuccessful litigant's welfare benefits were "consumed by their basic subsistence needs," *see Damgaard v. Mckennan*, No. 13-cv-2192 (SRN/JSM), 2016 WL 1718370 (D. Minn. Apr. 29, 2016);
- Unsuccessful litigant unable to work, in foreclosure and $550,000 in debt, *Kaplan v. Mayo Clinic*, No. 07-3630 (JRT/JJK), 2011 WL 3837095 (D. Minn. Aug. 29, 2011);
- Unsuccessful litigant unable to meet all of their obligations if costs were taxed, *Pimentel v. St. Louis Pub. Schools*, No. 4:08CV 1477 TIA, 2011 WL 3847413 (E.D. Mo. Aug. 26, 2011);
- Unsuccessful litigant unable to work because of a disability and required to stay home and care for a disabled son, *Finch v. Texarkana Sch. Dist. No. 7 of Miller Cty.*, No. 05-CV-4070, 2009 WL 196546 (W.D. Ark. Jan. 28, 2009);
- Unsuccessful litigant unable find permanent employment, *Taylor v. Georgia-Pacific Corp & Int'l Ass'n of Machinist & Aerospace Workers Local W475*, No. 06-CV-1079, 2008 WL 5156315 (W.D. Ark. Dec. 8, 2008).

Second, Plaintiffs have not established that an award of costs against them is unfair, except to say that Plaintiffs lack the resources to pay Defendant's costs incurred.[3]  But, the law requires even indigent parties to pay the costs of litigation, except for those items waived by a party's *in forma pauperis* status.  *Lamar v. Kisrel*, No. 10CV761, 2012 WL 2132276, at *2 (W.D.N.Y. June 12, 2012) ("it is the plaintiff's responsibility to pay for the costs of litigation other than the fees and specified items waived by the grant of the plaintiff's *in forma pauperis* status").  To hold otherwise "would in effect force defendants to finance much of their indigent adversary's trial preparation, regardless of

---

[3] While Plaintiffs claimed they qualified for *in forma pauperis* status nearly seven years ago, *see* Docs. 2–15, they have not put forward any evidence of their current financial situation or the foreseeability of their future financial situation.  Indeed, as observed by the *Kaplan* case relied on by Plaintiffs, it is not enough to make bald allegations or – as Plaintiffs did here – claim they will prove their indigency later.  *See, e.g., Kaplan*, 2011 WL 3837095, at *2 (stating that "[a] losing party must establish indigence through affidavits or other evidence of income, assets, and schedules of expenses" and that "[t]he nonprevailing party must be facing dire financial circumstances to avoid taxation of costs").

the outcome of the case." *See Doe v. U.S.*, 112 F.R.D. 183, 184-85 (S.D.N.Y. 1986) (discussing deposition expenses). That the Court granted Plaintiffs' request to use Rule 706 of the Federal Rules of Evidence to "allow the Court to provide for compensation of experts to assist Plaintiffs," Doc. 319 at 6, is no excuse for the named plaintiffs to avoid paying the cost.

Third, it is of no consequence that the 706 experts' ultimate opinions supported Defendants' case. That the 706 experts offered opinions that were helpful to Defendants is a reflection of Defendant's sex offender treatment program. This is especially true given the direction the experts received from the Court to find someone who could "serve as an example" of an individual improperly treated or placed at MSOP. Doc. 569 at 76. Regardless, the 706 experts must have been helpful to Plaintiffs, unless Plaintiffs chose to spend over a week of their case in chief introducing evidence unfavorable to them. *See* Docs. 839, 847, 848, 851, 852, 860 (minute entries showing Plaintiffs called the 706 experts in their case in chief).

## II.    PLAINTIFFS' OBJECTIONS TO DEPOSITION AND HEARING TRANSCRIPT COSTS SHOULD BE OVERRULED.

Plaintiffs oddly object to costs related to eight deposition transcripts on the grounds that the deponents did not testify at trial, and their depositions were not admitted into evidence. *See* ECF No. 1116, at 9. But whether an individual testified at trial or her deposition transcript was introduced at summary judgment is not the end of the inquiry. Rather, costs may be taxed related to depositions that "are deemed reasonably necessary to the parties at the time they are taken." *Superior Seafoods Inc. v. Hanft Fride*,

No. 05-170 (DWF/FLN), 2011 WL 6218286, at *1 (D. Minn. Nov. 21, 2011). "[D]eposition transcripts for witnesses that possessed information relevant to the claims or defense in the case may be taxed, even though the transcripts were not used at summary judgment." *Id.* Further, courts in this district have consistently allowed the prevailing party to recover costs related to depositions noticed and taken by the non-prevailing party. *See, e.g.*, *Shukh v. Seagate Tech., LLC*, No. 10-404 (JRT/JJK), 2014 WL 4348199, at *4 (D. Minn. Sept. 2, 2014) ("Generally, courts allow the prevailing party to recover the costs for depositions noticed and taken by the losing party."), *vacated on other grounds by* 618 Fed. App'x 678 (Fed. Cir. 2015); *Smith-Bunge v. Wisc. Central, Ltd.*, No. 15-4383 (DSD/LIB), 2018 WL 2926497, at *2 (D. Minn. June 7, 2018) (awarding costs for depositions taken by Plaintiffs).

Of the eight transcripts to which Plaintiffs object, seven were noticed and taken by Plaintiffs themselves.[4] Plaintiffs must have believed that these seven individuals possessed information relevant to their claims, or else they presumably would not have noticed their depositions. *See* Fed. R. Civ. P. 26(b)(1) (stating that parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Thus, these costs are taxable.

As to the deposition of Mr. Buse, such deposition was necessitated by Plaintiffs' failure to include residents of MSOP-St. Peter and Community Preparation Services among the class representatives. Unlike any of the Named Plaintiffs at the time, MSOP

---

[4] The depositions of Robin Benson, Samantha Benson, Sheila Brandt, Alissa Hannah, Mari Moen, Ana Remiger, and Ken Carabello were all noticed by Plaintiffs.

client Buse resided at the MSOP-St. Peter campus. Given that Plaintiffs' lawsuit challenged the conditions at all MSOP locations, it was necessary to depose Mr. Buse.[5]

Plaintiffs next argue that the Clerk should not tax costs related to the expedited nature of Mr. Carabello's deposition transcript. ECF No. 1116, at p. 10. An expedited transcript was necessary because the deadline for parties to file dispositive motions was a mere seven days after Mr. Carabello's deposition, *see* Doc. 647, and Defendant needed to be able to adequately respond to any claims made by Plaintiffs in their brief. *See Smith-Bunge*, 2018 WL 2926497, at *2 (finding that a deposition transcript was reasonably necessary for the prevailing party to "adequately respond to any claims made by" the non-prevailing party in its summary judgment opposition).[6]

Finally, as to the hearing transcripts objected to by Plaintiffs, such transcripts were necessarily obtained for use in this litigation, as outlined in Defendants' spreadsheet of costs.[7] Plaintiffs have not provided any reason why these transcripts were not necessarily obtained for litigation. Indeed, as Defendants outlined in their bill of costs, hearing

---

[5] While Defendant observes that the Clerk's Bill of Costs Guide states the Clerk generally does not tax delivery fees for deposition transcripts, the fees challenged by Plaintiffs were necessary for litigation because they were charged by Plaintiffs' own court reporter. This is not an instance where the delivery fee was included for the convenience of the parties, but rather a required cost associated with having to defend the 32 depositions noticed by Plaintiffs.

[6] Even if it was not necessary to expedite Mr. Carabello's deposition transcript, the Clerk should nevertheless tax the cost of the deposition at the normal rate of $3.00 per page, as documented on other invoices from Merrill Corporation that Plaintiffs have not objected to.

[7] Plaintiffs have not objected to the transcript costs for trial (Lines 106–111), and therefore such costs should at a minimum be awarded.

9

transcripts were necessary, in at least some cases, for post-hearing or motion briefing or for trial.

## CONCLUSION

For the foregoing reasons, the Court should tax the costs contained in Defendants' bill of costs (Doc. 1114).

Dated:  October 11, 2018.

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota

**<u>s/ Scott H. Ikeda</u>**
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771
scott.ikeda@ag.state.mn.us

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914
aaron.winter@ag.state.mn.us

445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1385 (Voice)
(651) 282-5832 (Fax)
(651) 297-7206 (TTY)

*Attorneys for Defendants Emily Piper,*
*Kevin Moser, Peter Puffer, Nancy Johnston,*
*Jannine Hébert, and Ann Zimmerman*