UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin Scott Karsjens, et al., | Civil File No. 11-cv-3659 (DWF/TNL) |
| Plaintiffs, | |
| vs. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO BILL OF COSTS** |
| Jodi Harpstead, et al., | |
| Defendants. | |

The costs Defendants seek to tax are all costs the Clerk of Courts already determined are appropriate.[1]  Docs. 1125, 1125-1.  Plaintiffs' objections should be overruled, and the Clerk of Courts should enter a cost judgment for $837,926.13.

## FACTUAL BACKGROUND

In August 2013, Plaintiffs asked the Court "to order the State to provide for the payment of the reasonable expenses, which will be incurred by Plaintiffs in this litigation relating to expert witnesses, depositions, transcripts, and copying."  Doc. 319, at 2. Plaintiffs claimed that Federal Rule of Evidence 706[2] "provide[d] a sound basis for the Court to appoint experts in this matter" at Defendants' expense.  *Id*. at 6, 7–8.  Plaintiffs told the Court that if it "d[id] not agree that it can provide for reasonable compensation of

---

[1] Defendants seek costs for one transcript that was not previously taxed by the Clerk due to a lack of documentation.  Defendants have now provided the invoice for this transcript.
[2] Recognizing that the federal *in forma pauperis* statute did not help them, Plaintiffs also sought relief under Minnesota's IFP law.  Doc. 319, at 12–19.  The Court correctly held that Minnesota state law did not apply under the circumstances.  Doc. 354, at 3–4.

expert expenses without appointing the experts itself, then, in the alternative, Plaintiffs would seek that the Court appointment [sic] such experts, in consultation with Plaintiffs' counsel." *Id.* at 12. Defendants objected. Doc. 328.

Appointing expert witnesses "for the benefit of the Court," Doc. 354, at 4, the Court granted Plaintiffs' motion. *Id.* Upon appointing the 706 Experts, the Court stated their compensation would be "paid by the parties in the proportion and at the time the Court will direct," and noted that "[p]ursuant to Rule 706(c), the [706 Experts'] compensation **shall be charged as costs in this litigation**." Doc. 393, at 5 (emphasis added). The Court instructed the parties to "confer and report to the Court any joint or separate recommendations they may have for the allocation of such payment." *Id.* The parties jointly recommended that the 706 Experts' costs be allocated "50/50 between plaintiffs and defendants." Doc. 403. Despite (1) the parties' agreement to front the costs for the 706 experts equally, and (2) the fact that the 706 Experts were appointed at the request of Plaintiffs, the Court nevertheless "initially allocated" the entirety of the 706 Experts' costs to Defendants. Doc. 427, at 75. The Court required Defendants to deposit $1.8 million to pay for these experts. Doc. 434, at 2.

Subsequent proceedings confirmed that the appointment of experts under Rule 706 were—as Plaintiffs requested—"to allow the Court to provide for compensation of experts to assist Plaintiffs." Doc. 319 at 6. Specifically, in July 2014, Defendants learned for the first time that the Court gave instructions to the 706 Experts to find evidence to support Plaintiffs' claims. Doc. 569, at 75–80; *see also* Fed. R. Evid. 706(b) (requiring the court inform the expert of the expert's duties "in writing and have a copy filed with the clerk or

2

may do so orally at a conference in which the parties have an opportunity to participate"). As one of the experts testified, the process directed by the Court would never result in a report about an individual or individuals who were in the right location, in the right phase of treatment, and receiving the proper treatment for their treatment phase:

> Q. And so, you're not actually going to be writing any individualized reports about committed individuals at MSOP who are both in the right placement, in the right phase of treatment and receiving the proper treatment for their treatment phase; is that right?
>
> A. Yes. Sorry, I may have misheard you the first time.

Doc. 569, at 80:17–:22. Dr. Robin Wilson, one of the 706 Experts, explained that the Court "wondered whether or not there were any specific individuals that [the 706 Experts] might – that we might ascertain would merit some further investigation or might actually be someone that could be either recommended for release or for some sort of a change in circumstances." *Id.* at 75:21–76:1. Dr. Wilson testified that the Court wanted the 706 Experts to identify an individual to "serve as an example" of a "person [that] could have their circumstances changed." *Id.* at 76:2–:16.

Although Plaintiffs now seem to suggest that the 706 Experts were actually more helpful to Defendants, Doc. 1207, at 11–12, Plaintiffs ultimately called all of the 706 Experts at the beginning of their case.[3] Docs. 839, 847, 848, 851, 852, 860 (minute entries identifying witnesses that testified at trial). Indeed, the first six days of Plaintiffs' case-in-chief consisted largely of the 706 Experts. *Id.*

---

[3] For scheduling reasons, Plaintiffs called then-Commissioner Jesson out of order on the fifth day of trial. *See* Tr. 234–35; Doc. 852.

3

Defendants have sought multiple times to have the costs associated with these experts allocated to Plaintiffs. Docs. 1092, 1097, 1114. Indeed, at summary judgment following the *Karsjens I* remand, Defendants asked the Court to finally apportion the 706 Experts' costs to Plaintiffs. Doc. 1097, at 12–13. The Court denied final apportionment of the 706 Experts' costs as "premature" and stated that the issue would be revisited "in connection with a Motion for Costs pursuant to Federal Rule of Civil Procedure 54." Doc. 1108, at 39–40, 42.

Following the Court's invitation, Defendants then sought their costs under Rule 54 following the 2018 entry of final judgment. Doc. 1114. Plaintiffs objected, raising nearly identical objections to the objections they make now. Doc. 1116. Rejecting nearly all of Plaintiffs' objections, the Clerk of Court taxed $837,534.23 in costs, including all of the 706 Expert costs and the majority of the transcript costs sought.[4] Docs. 1125, 1125-1. Plaintiffs moved the district court to review the cost judgment, but subsequently withdrew the motion without prejudice after the Eighth Circuit's decision in *Karsjens II*. Docs. 1126, 1146.

On remand following the Eighth Circuit's decision in *Karsjens II*, the Court again dismissed the remaining claims in this lawsuit and entered final judgment in favor of

---

[4] The Clerk of Courts denied certain transcript costs related to eTranscript and condensed transcript costs and delivery charges. Doc. 1125-1, at 1–3. It also denied $210 for the lack of an explanation for why a rough ASCII was necessary for one transcript, as well as all costs related to the July 31, 2014 deposition transcript of Nancy Johnston due to a missing invoice. *Id.* Aside from the Johnston deposition transcript, Defendants are not seeking recovery of these costs; with this motion, Defendants provide the invoice previously identified as missing by the clerk.

4

Defendants; all claims have now again been decided by the Court in Defendants' favor. Doc. 1197. Defendants therefore move again for their costs. Defendants again seek $732,923.92 in 706 Experts' costs—the same amount the Clerk of Court previously taxed—as well as $105,002.21 in transcript costs.

## ARGUMENT

### I.  NAMED PLAINTIFFS SHOULD PAY DEFENDANTS' COSTS

Fed. R. Civ. P. 54(d)(1) creates a presumption that costs of a proceeding are taxed in favor of the prevailing party. "When an expense is taxable as a cost . . . there is a strong presumption that a prevailing party shall recover it 'in full measure.'" *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462, 468 (3d Cir. 2000) and citing *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir.1997)). "The 'losing party bears the burden of making the showing that an award is inequitable under the circumstances.'" *Id.* (quoting *In re Paoli,* 221 F.3d at 462–63). And, "[t]o rebut the presumption that the prevailing party is entitled to recover all of its costs, the district court must provide a rationale for denying the prevailing party's claim for costs." *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006). "A general statement of fairness is insufficient, without more, to rebut the Rule 54(d)(1) presumption for an award of costs to the prevailing party." *Id.*

Indigence is not enough to avoid taxing costs against a party. 28 U.S.C. § 1915(f)(1) (IFP statute states that "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings"); *Jackson v. Unknown Smith*, 116 F.3d 480, 1997 WL 325433, at *1 (8th Cir. 1997) (*per curiam*) ("A prevailing party may recover

5

costs as a matter of course, if not precluded by federal law, whether the unsuccessful party is fee-paying or indigent."); *Porter v. McDonough*, No. 09-2536 (RHK/SER), 2011 WL 821181, at *1 (D. Minn. Mar. 2, 2011) (ordering indigent prisoner to pay costs and stating that "[w]hile inability to pay may support denying costs, it does not mandate it."); *Strutton v. Meade*, No. 4:05CV02022, 2010 WL 4609365, at *2 (E.D. Mo. Nov. 4, 2010) (awarding costs against indigent defendant and stating that "taxing costs in favor of the prevailing party is generally done as a matter of course" and "every lawsuit involves an assumption of some amount of monetary risk on the part of the plaintiff, and the possibility of the taxation of costs if one's claims are not successful is merely another such risk."). The Eighth Circuit has upheld multiple awards of Rule 54 costs against non-prevailing parties experiencing economic hardship. *Lampkins v. Thompson*, 337 F.3d 1009, 1017 (8th Cir.2003) (affirming award of costs to federal law enforcement agents and against indigent prisoner); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir.1983) (affirming award of costs to major corporation and against individual plaintiff of "limited financial resources")). Other circuits have also held that an indigent litigant may have costs taxed against him at the conclusion of the case if he is unsuccessful on the merits of his action. *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.1989) (noting that "several courts of appeals have approved the taxation of costs against indigent civil rights plaintiffs"); *Lay v. Anderson*, 837 F.2d 231 (5th Cir.1988) (per curiam); *Harris v. Forsyth,* 742 F.2d 1277 (11th Cir.1984); *Flint v. Haynes*, 651 F.2d 970 (4th Cir.1981).

6

Here, Plaintiffs' excuses for why they should not have to pay Defendants' costs have no merit. First, unlike the non-prevailing parties in the cases they cite, Plaintiffs have not established the consequences an award of costs would have on them:

- In *Damgaard v. Mckennan*, the unsuccessful litigant's family's financial circumstances were "dire," with "the welfare benefits they receive being consumed by their basic subsistence needs." No. 13-cv-2192 (SRN/JSM), 2016 WL 1718370, at *2 (D. Minn. Apr. 29, 2016);
- In *Kaplan v. Mayo Clinic*, the unsuccessful litigant had lost his ability to work due to medical procedures, he was in foreclosure, and he was $550,000 in debt. No. 07-3630 (JRT/JJK), 2011 WL 3837095, at *2 (D. Minn. Aug. 29, 2011);
- In *Pimentel v. St. Louis Public Schools*, the unsuccessful litigant was unable to meet all of her obligations if costs were taxed. No. 4:08CV 1477 TIA, 2011 WL 3847413, at *1 (E.D. Mo. Aug. 26, 2011);
- In *Finch v. Texarkana School District No. 7 of Miller County*, the unsuccessful litigant was unable to work because of a disability and was required to stay home and care for a disabled son. No. 05-CV-4070, 2009 WL 196546, at *1 (W.D. Ark. Jan. 28, 2009);
- In *Taylor v. Georgia-Pacific Corporation and International Association of Machinist and Aerospace Workers, Local W475*, the unsuccessful litigant was unable find permanent employment. No. 06-CV-1079, 2008 WL 5156315, at *1 (W.D. Ark. Dec. 8, 2008).

Second, Plaintiffs have not established that an award of costs against them is unfair, except to say that Plaintiffs lack the resources to pay Defendants' costs incurred.[5] But, the

---

[5] While Plaintiffs claimed they qualified for *in forma pauperis* status over ten years ago, *see* Docs. 2–15, they have not put forward any evidence of their current financial situation or the foreseeability of their future financial situation. Indeed, as observed by the *Kaplan* case relied on by Plaintiffs, it is not enough to make bald allegations or—as Plaintiffs did here—claim they will prove their indigency later. *See, e.g.*, *Kaplan*, 2011 WL 3837095, at *2 (stating that "[a] losing party must establish indigence through affidavits or other evidence of income, assets, and schedules of expenses" and that "[t]he nonprevailing party must be facing dire financial circumstances to avoid taxation of costs"). This is Plaintiffs' third opportunity to provide affidavits to support their alleged indigence, *see* Docs. 1116, 1127 (providing no affidavits in either their first bill of costs objection or in their first appeal of the cost judgment), but for whatever reason they again chose not to do so. Moreover, Plaintiffs failed to provide any evidence that their payment of costs are not available from other means. *See Hogan v. Novartis Pharm. Corp.*, 548 Fed. App'x 672,

law requires even indigent parties to pay the costs of litigation, except for those items waived by a party's *in forma pauperis* status. *Lamar v. Kisrel*, No. 10CV761, 2012 WL 2132276, at *2 (W.D.N.Y. June 12, 2012) ("It is the plaintiff's responsibility to pay for the costs of litigation other than the fees and specified items waived by the grant of the plaintiff's *in forma pauperis* status"). To hold otherwise "would in effect force defendants to finance much of their indigent adversary's trial preparation, regardless of the outcome of the case." *See Doe v. U.S.*, 112 F.R.D. 183, 184–85 (S.D.N.Y. 1986) (discussing deposition expenses). That the Court granted Plaintiffs' request to use Rule 706 of the Federal Rules of Evidence to "allow the Court to provide for compensation of experts to assist Plaintiffs," Doc. 319, at 6, is no excuse for the named plaintiffs to avoid paying the cost. Further, Plaintiffs' purported indigency does not square with Plaintiffs' previous offer to split the initial allocation of the 706 Experts' costs equally with Defendants. Doc. 403.

Third, it does not matter that the 706 Experts' ultimate opinions partially supported Defendants' case. That the 706 Experts offered opinions that were helpful to Defendants reflects the quality of Defendants' sex offender treatment program. This is especially true given the direction the experts received from the Court to find someone who could "serve as an example" of an individual improperly treated or placed at MSOP. Doc. 569, at 76.

---

674 (7th Cir. 2013) (affirming cost judgment against indigent party when, among other things, evidence showed her attorney agreed to cover any taxed costs as part of the retainer agreement). Whether Plaintiffs are personally liable to pay any cost judgment is especially questionable given Plaintiffs' counsel's previous agreement to split the costs of the 706 Experts "50/50." Doc. 403.

8

Regardless, unless Plaintiffs chose to spend nearly the entire first week of their case in chief introducing evidence unfavorable to them, Plaintiffs must have believed the 706 Experts helped their case. *See* Docs. 839, 847, 848, 851, 852, 860 (minute entries showing Plaintiffs called the 706 experts in their case in chief).

Finally, the Clerk of Courts already found these costs to be appropriately taxable. *See* Docs. 1125, 1125-1 (taxing 706 Experts' costs). Plaintiffs have raised no new objections such that the Clerk of Court should change course from its previous cost judgment.

## II. PLAINTIFFS' OBJECTIONS TO DEPOSITION AND HEARING TRANSCRIPT COSTS SHOULD BE OVERRULED.

Plaintiffs oddly object to costs related to eight deposition transcripts on the grounds that the deponents did not testify at trial, and their depositions were not admitted into evidence. *See* Doc. 1207, at 13–14. But whether an individual testified at trial or her deposition transcript was introduced at summary judgment is not the end of the inquiry. Rather, costs may be taxed related to depositions that "are deemed reasonably necessary to the parties at the time they are taken." *Superior Seafoods Inc. v. Hanft Fride*, No. 05-170 (DWF/FLN), 2011 WL 6218286, at *1 (D. Minn. Nov. 21, 2011). "[D]eposition transcripts for witnesses that possessed information relevant to the claims or defense in the case may be taxed, even though the transcripts were not used at summary judgment." *Id.* Further, courts in this district have consistently allowed the prevailing party to recover costs related to depositions noticed and taken by the non-prevailing party. *See, e.g.*, *Shukh v. Seagate Tech., LLC*, No. 10-404 (JRT/JJK), 2014 WL 4348199, at *4 (D. Minn.

Sept. 2, 2014) ("Generally, courts allow the prevailing party to recover the costs for depositions noticed and taken by the losing party."), *vacated on other grounds by* 618 Fed. App'x 678 (Fed. Cir. 2015); *Smith-Bunge v. Wisc. Central, Ltd.*, No. 15-4383 (DSD/LIB), 2018 WL 2926497, at *2 (D. Minn. June 7, 2018) (awarding costs for depositions taken by Plaintiffs).

As an initial matter, the Clerk of Court already rejected Plaintiffs' arguments on these eight transcripts and previously taxed these costs to Plaintiffs. *See* Doc. 1125-1, at 2–3 (taxing costs of these transcripts). Further, of the eight transcripts to which Plaintiffs object, seven were noticed and taken by Plaintiffs themselves.[6] Plaintiffs must have believed that these seven individuals possessed information relevant to their claims or they presumably would not have noticed their depositions. *See* Fed. R. Civ. P. 26(b)(1) (stating that parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").

As to the deposition of Mr. Buse, that deposition was necessitated by Plaintiffs' failure to include residents of MSOP-St. Peter and Community Preparation Services among the class representatives. Unlike any of the Named Plaintiffs at the time, MSOP client Buse resided at the MSOP-St. Peter campus. Given that Plaintiffs' lawsuit challenged the conditions at all MSOP locations, it was necessary to depose Mr. Buse.

Plaintiffs next argue that the Clerk should not tax costs related to the expedited nature of Mr. Carabello's deposition transcript. Doc. 1207, at 13–14. The Clerk of Court

---

[6] The depositions of Robin Benson, Samantha Benson, Sheila Brandt, Alissa Hannah, Mari Moen, Ana Remiger, and Ken Carabello were all noticed by Plaintiffs.

10

already rejected this precise argument. Doc. 1125-1, at 3 (taxing all costs related to Carabello's deposition transcript except for costs related to a rough ASCII and delivery charges that Defendants do not seek in their current bill of costs). In any event, an expedited transcript was necessary because the deadline for parties to file dispositive motions was a mere seven days after Mr. Carabello's deposition, *see* Doc. 647, and Defendants needed to be able to adequately respond to any claims made by Plaintiffs in their brief. *See Smith-Bunge*, 2018 WL 2926497, at *2 (finding that a deposition transcript was reasonably necessary for the prevailing party to "adequately respond to any claims made by" the non-prevailing party in its summary judgment opposition).[7]

Finally, as to the hearing transcripts objected to by Plaintiffs, such transcripts were necessarily obtained for use in this litigation, as outlined in Defendants' spreadsheet of costs.[8] Plaintiffs have not provided any reason why these transcripts were not necessary. Indeed, as Defendants outlined in their bill of costs, hearing transcripts were necessary, in at least some cases, for post-hearing or motion briefing or for trial.[9]

---

[7] Even if it was not necessary to expedite Mr. Carabello's deposition transcript, the Clerk should nevertheless tax the cost of the deposition at the normal rate of $3.00 per page, as documented on other invoices from Merrill Corporation that Plaintiffs have not objected to.

[8] Plaintiffs have not objected to the transcript costs for trial (Lines 106–111), and therefore such costs should at a minimum be awarded.

[9] And, again, the Clerk already rejected these arguments by Plaintiffs. Doc. 1116-1.

### III. PLAINTIFFS' REQUEST TO STAY THE BILL OF COST PROCEEDINGS IS NOT PROCEDURALLY PROPER AND EVEN IF IT WERE, IT SHOULD BE DENIED.

The District of Minnesota's Bill of Costs Guide[10] clearly prohibits requests for a stay in a party's objection to costs: "Do not request to stay the determination of costs in an Objection to the Bill of Costs as the Clerk does not have [the] authority to determine a request for a stay." D. Minn. Bill of Costs Guide, at 3. Rather, "Motions to Stay Costs Pending Appeal should be made directly to the District Judge in the case in accordance with LR 7.1." *Id.* Plaintiffs' request to stay the determination of costs is procedurally improper and should be denied.

But even if it were permissible for Plaintiffs to request a stay in its objection, the request should be denied. The taxation of costs is not prohibited even though an appeal is pending; indeed, the Local Rules were specifically amended in 2009 to "change[] the past practice of the Clerk of Court not to tax costs until all applicable appeal periods have expired." 2009 Advisory Committee's Note to L.R. 54.3. The Eighth Circuit has affirmed costs awarded during a pending appeal, noting that no authority prohibits such an award. *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 930 (8th Cir. 2011). When deciding whether to issue a stay pending appeal, courts in this District have considered the factors of judicial economy, whether the movant demonstrates a strong showing of success on appeal, whether the movant will suffer irreparable injury absent a stay, and whether a stay

---

[10] Defendants understand that the District's Bill of Costs Guide is not itself legal authority. It is, however, "persuasive evidence of the law as it exists within the District of Minnesota regarding the billing of costs." *Mountain Marketing Grp v. Heimerl & Lammers, LLC*, No. 14-cv-846, 2016 WL 424964, at *1 n.1 (D. Minn. Feb. 3, 2016).

harms the public interest. *Kushner v. Buhta*, No. 16-cv-2646, 2019 WL 1417434, at *4 (D. Minn. Mar. 29, 2019). All of these factors favor Defendants.

First, judicial economy is best served by taxing costs now. "The possibility that the underlying judgment might be reversed, with the result that the award of costs must also be reversed, is simply too speculative to outweigh the benefit of the trial court conducting a review of the bill of costs while the case is still fresh." *Id.* (quoting *Prism Techs., LLC v. McAfee, Inc.*, No. 10-220, 2013 WL 571789, at *2 (D. Neb. Feb. 13, 2013)). Plaintiffs erroneously believe that because this case has been pending for nearly *eleven years*, a stay somehow *favors* judicial economy. This makes no sense. The last appeal to the Eighth Circuit took two-and-a-half years before the parties received a decision. Adding on the time it took for Plaintiffs' petition for certiorari to the Supreme Court to be denied, three years elapsed before the case returned to the district court. Assuming similar timelines for the present appeal, Plaintiffs would have the Court wait to tax costs until 2025—a date *fourteen years* after this case was initially filed, and *ten years* after the trial occurred in this matter—to decide the issue of costs. This is the opposite of judicial economy.

Second, Plaintiffs failed to show they are likely to succeed on the merits of their appeal. Their argument is a single sentence that cites no case law and merely states they have a likelihood of success because they won an "initial victory" and a "partial victory on one of two appeals." Plaintiffs' "initial victory" was reversed in its entirety by the Eighth Circuit, *see Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017), and Plaintiffs' "partial victory" in their second appeal was a decision that simply remanded the case to the district court to apply a different legal standard—a legal standard that again resulted in the

13

dismissal of all of Plaintiffs' remaining claims, Doc. 1197. Two "victories" that later resulted in the dismissal of Plaintiffs' complaint is far from a showing that Plaintiffs are likely to succeed on the merits of an appeal.

Third, Plaintiffs provided no evidence that they will suffer irreparable injury absent a stay. Plaintiffs misinterpret this factor, arguing that *Defendants* will not suffer irreparable harm. But the question is whether the party seeking a stay, not the party seeking its costs, will be irreparably harmed. *Kushner*, 2019 WL 1417434, at *4. If Plaintiffs' claim is true that they "would be wholly unable to pay" any costs taxed to them,[11] whether a cost judgment is decided now or in three years will not affect Plaintiffs at all.

Finally, public interest favors deciding Defendants' bill of costs without delay "because doing so preserves judicial economy and allows for the prompt resolution of the remaining issues before the Court." *Inline Packaging, LLC v. Graphic Packaging Int'l*, No. 15-3183, 2019 WL 1058241, at *2 (D. Minn. Mar. 6, 2019).

---

[11] As discussed above, this claim is unsupported by any evidence.

## CONCLUSION

For the foregoing reasons, the Court should tax the costs contained in Defendants' bill of costs.

Dated: April 13, 2022.　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　KEITH ELLISON
　　　　　　　　　　　　　　　　　　　　Attorney General
　　　　　　　　　　　　　　　　　　　　State of Minnesota

　　　　　　　　　　　　　　　　　　　　**s/ Brandon Boese**

　　　　　　　　　　　　　　　　　　　　SCOTT H. IKEDA
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　Atty. Reg. No. 0386771
　　　　　　　　　　　　　　　　　　　　scott.ikeda@ag.state.mn.us

　　　　　　　　　　　　　　　　　　　　AARON WINTER
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　Atty. Reg. No. 0390914
　　　　　　　　　　　　　　　　　　　　aaron.winter@ag.state.mn.us

　　　　　　　　　　　　　　　　　　　　BRANDON BOESE
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　Atty. Reg. No. 0396385
　　　　　　　　　　　　　　　　　　　　brandon.boese@ag.state.mn.us

　　　　　　　　　　　　　　　　　　　　445 Minnesota Street, Suite 1400
　　　　　　　　　　　　　　　　　　　　St. Paul, Minnesota 55101-2131
　　　　　　　　　　　　　　　　　　　　(651) 757-1414 (Voice)
　　　　　　　　　　　　　　　　　　　　(651) 282-5832 (Fax)

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*

|#5208308-v1